IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | 2 CA-CR 2012-0228 |
| | ) | DEPARTMENT A |
| Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| ANGEL ANTONIO PEREZ, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20100321002

Honorable Howard Fell, Judge Pro Tempore

AFFIRMED IN PART; VACATED IN PART

---

Thomas C. Horne, Arizona Attorney General
  By Joseph T. Maziarz and Alan L. Amann                    Tucson
                                                  Attorneys for Appellee

Barton & Storts, P.C.
  By Brick P. Storts, III                                   Tucson
                                                  Attorneys for Appellant

---

H O W A R D, Chief Judge.

¶1        After a jury trial, appellant Angel Perez was convicted of felony murder and two counts of attempted armed robbery. On appeal, he argues the trial court erred by giving an incorrect felony murder instruction, in its rulings on several evidentiary matters at trial, and in failing to suppress Perez's statements. He further argues the prosecutor committed misconduct warranting a new trial. For the following reasons, we affirm Perez's convictions and sentences but vacate a criminal restitution order imposed as part of his sentence.

**Factual and Procedural Background**

¶2        We view the facts in the light most favorable to upholding the conviction. *See State v. Mangum*, 214 Ariz. 165, ¶ 3, 150 P.3d 252, 253 (App. 2007). In June 2009, L.F. and Jr. were sitting on the patio of their home drinking beer. With a black t-shirt covering his face, Perez approached the home wielding a gun. He demanded marijuana, money, and the keys to L.F. and Jr.'s truck. Jr. walked to the nearby truck and gave Perez a bag of marijuana that was inside, then returned to the patio of the house. L.F. tried to escort Perez away from the property and Perez shot him. Jr. ran inside and told his mother to call 9-1-1, then ran outside and dragged L.F. inside the house. L.F. was airlifted to a hospital for treatment where he remained for six weeks. He eventually died as a result of his gunshot wounds.

¶3        Perez was charged and convicted as described above. He was sentenced to concurrent terms for the murder and one count of armed robbery, the longest of which was a life sentence without possibility of release for 25 years, and to a consecutive,

2

presumptive term of 7.5 years for the other count of armed robbery. We have jurisdiction over his appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 13-4033(A)(1).

## Felony Murder Instruction

**¶4** Perez first argues the trial court erred by giving an incorrect felony murder instruction that requires reversal and remand for a new trial. The state concedes the court's instruction constituted error but argues the error was harmless. We review a claim based on an incorrect jury instruction for harmless error.[1] *State v. Valverde*, 220 Ariz. 582, ¶ 11, 208 P.3d 233, 236 (2009). An error is harmless if the state can establish beyond a reasonable doubt, "'in light of all of the evidence,'" that the error did not "contribute to or affect the verdict." *Id.*, *quoting State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993).

**¶5** Felony murder consists of a person committing a predicate felony, including robbery, and "in the course of and in furtherance of the offense or immediate flight from the offense, the person or another person causes the death of any person." A.R.S. § 13-1105(A)(2). "[W]here the killing 'emanates' from the crime itself, and is a natural and proximate result thereof, it is committed in furtherance of the felony within the meaning of the statute." *State v. Lopez*, 173 Ariz. 552, 555, 845 P.2d 478, 481 (App. 1992), *quoting State v. Moore*, 580 S.W.2d 747, 751 (Mo. 1979).

---

[1]Although the state does not argue Perez forfeited this argument by not raising it below, we question whether he adequately preserved this issue for appeal because he did not inform the trial court some of the language in the proposed instruction had been disapproved by our supreme court. *State v. Lopez*, 217 Ariz. 433, ¶ 4, 175 P.3d 682, 683 (App. 2008) (objection on one ground does not preserve objection on another). But regardless of the standard of review, Perez was not prejudiced.

3

¶6 The trial court gave the jury a standard felony murder instruction, but also added the following language:

> [T]here is no requirement that the killing occurred while committing or engaged in the felony, or that the killing be part of the felony. The homicide need not have been committed to perpetrate the felony.
>
> It is enough if the felony and the killing were part of the same series of events.

Our supreme court has explicitly disapproved the last sentence of this instruction. *State v. Martinez*, 218 Ariz. 421, ¶ 23, 189 P.3d 348, 354-55 (2008). The court explained that the language of that sentence has "long [been] absent from Arizona's felony murder statute." *Id.*

¶7 Despite this erroneous instruction, the state has shown beyond a reasonable doubt that the instruction could not have affected the verdict. The evidence adduced at trial shows that the murder occurred "in the course of and in furtherance of the offense" of armed robbery. § 13-1105(A)(2). During Perez's armed attempt to get marijuana, money, and truck keys from the victims, L.F. resisted. Perez shot him during that resistance. Perez never claimed this conduct did not occur "in the course of and in furtherance of the offense or immediate flight from the offense," § 13-1105(A)(2), but rather denied he was the perpetrator. Thus, the erroneous language was never in issue. Moreover, this conduct fulfills the statutory requirements, and additional language in the instruction that might have allowed the jury to convict under more attenuated circumstances could not have affected the verdict in this case. Accordingly, although the

4

trial court erred, the state has met its burden of proving beyond a reasonable doubt that the error was harmless. *Valverde*, 220 Ariz. 582, ¶ 11, 208 P.3d at 236.

## Prosecutorial Misconduct

**¶8** Perez next argues the prosecutor committed misconduct by failing to redact a recording of Perez's statement, having a conflict of interest with a witness, improperly vouching for the credibility of a witness, and failing to "follow the rules and file motions." The state responds that no misconduct occurred.

**¶9** As an initial matter, Perez has forfeited two of these arguments. First, Perez did not object to the prosecutor having a conflict of interest below and has therefore forfeited that argument absent fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607 (2005) (failure to object to alleged error in trial court results in forfeiture of review for all but fundamental error). But because he does not argue on appeal that the alleged error is fundamental, and because we find no error that can be so characterized, the argument is waived. *See State v. Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d 135, 140 (App. 2008) (failure to argue fundamental error on appeal waives argument); *State v. Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d 641, 650 (App. 2007) (court will not ignore fundamental error if it finds it).

**¶10** Second, his argument that the prosecutor did not "follow the rules and file motions" is completely unsupported by authority or citations to the record. He has therefore waived this issue by failing to adequately argue it on appeal. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi) (opening brief "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities,

5

statutes and parts of the record relied on."); *State v. Bolton*, 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) (inadequate argument on appeal waives issue).

¶11        To show that reversible misconduct occurred, the defendant must establish "that the prosecutor's misconduct 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Hughes*, 193 Ariz. 72, ¶ 26, 969 P.2d 1184, 1191 (1998), *quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). We also consider whether the cumulative effect of the misconduct "permeate[d] the entire atmosphere of the trial." *Id.*

¶12        Perez, however, does not argue that the alleged misconduct in his remaining claims, whether considered individually or cumulatively, actually denied him a fair trial. He therefore has failed to meet his burden of establishing that the prosecutor's conduct here infected the trial with unfairness to such a degree that it denied him due process of law. *See id.*

¶13        Moreover, the conduct Perez objects to did not amount to misconduct. As to the recording, the prosecutor did initially redact the recording. However, when it was played in court, Perez objected that it had been over-redacted. After consulting with counsel, the trial court characterized the redactions that were made as at most a "misunderstanding" between the court and counsel, found no prejudice to Perez, and ordered the recording played in full with the exception of one portion at the end. This record shows the prosecutor made a good faith effort to comply with the original order to redact the recording, followed by the prosecutor's compliance with an explicit order of

the court. The prosecutor did not commit misconduct by complying with the court's orders.

¶14    Nor did the prosecutor impermissibly vouch for his witness. The prosecutor asked the witness, who was scheduled to be sentenced in a later case, if the witness felt lying on the stand could have an adverse affect on his sentence. In so asking, the prosecutor did not "plac[e] the prestige of the government behind [the] witness," but rather elicited what motives a witness of perhaps questionable credibility might have for telling the truth. *See State v. Palmer*, 219 Ariz. 451, ¶ 6, 199 P.3d 706, 708 (App. 2008). No misconduct occurred. Accordingly, we reject Perez's argument. *See Hughes*, 193 Ariz. 72, ¶ 26, 969 P.2d at 1191.

### *Daubert* Hearing on Polygraph Test Results

¶15    Perez next argues the trial court erred by failing to conduct a hearing on the admissibility of Perez's polygraph examination results pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). We review decisions on the admissibility of evidence for an abuse of discretion. *State v. McGill*, 213 Ariz. 147, ¶ 30, 140 P.3d 930, 937 (2006). Before trial, Perez sought to introduce the results of his polygraph examination because he considered them favorable. The state did not stipulate to their admission. The trial court ruled that polygraph test results were "generally inadmissible and specifically in this case . . . inadmissible."

¶16    Effective January 1, 2012, Arizona essentially adopted the federal *Daubert* standard for determining the admissibility of expert testimony. *See* Ariz. R. Evid. 702 cmt. The purpose of the rule is to require the court to serve as a "gatekeeper[]" that

7

admits testimony it initially finds reliable, freeing the jury to weigh what the court has already determined is "reliable, expert testimony." *Id.* Qualified experts may offer opinion testimony under Rule 702 if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Before the rule changed, our supreme court held that "[p]olygraph evidence is deemed inadmissible because it is unreliable and the trier of fact has a tendency to treat such evidence as conclusive on the issue of guilt." *State v. Ikirt*, 160 Ariz. 113, 115, 770 P.2d 1159, 1161 (1987); *see also State v. Valdez*, 91 Ariz. 274, 278-79, 371 P.2d 894, 897-98 (1962). Accordingly, Arizona courts have concluded that, absent a stipulation by the parties, such test results are categorically inadmissible. *State v. Hoskins*, 199 Ariz. 127, ¶ 69, 14 P.3d 997, 1014 (2000).

¶17 Although many federal courts have abandoned their per se rules of inadmissibility of polygraph results after *Daubert*, others have retained theirs. *See, e.g.*, *United States v. Prince-Oyibo*, 320 F.3d 494, 501 (4th Cir. 2003) (retaining the rule); *United States v. Lea*, 249 F.3d 632, 639 n.4 (7th Cir. 2001) (abandoning rule); *United States v. Benavidez-Benavidez*, 217 F.3d 720, 724 (9th Cir. 2000) (abandoning rule, but expressing no "'new enthusiasm for admission of unstipulated polygraph evidence'" and noting polygraph evidence's "'grave potential for interfering with the deliberative

8

process.'"), *quoting United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir. 1997). But the United States Supreme Court has held that a per se rule excluding polygraph tests is constitutional, and in so doing specifically referred to the fact that "[m]ost States maintain *per se* rules excluding polygraph evidence." *United States v. Scheffer*, 523 U.S. 303, 309, 311-12 (1998). Although it noted a circuit split on this issue, it did not mandate either per se exclusion or *Daubert* hearings.

¶18          Perez cites *Cordoba* for the proposition that *Daubert* removed the per se rule excluding admissibility of polygraph tests. 104 F.3d at 227. But in light of the Supreme Court's reasoning in *Scheffer*, we cannot say that *Daubert* made such a change. Perez has presented no evidence or argument of a change in polygraph technology or circumstance between *Hoskins* and this case that would justify a change in Arizona's rule. Accordingly, our supreme court's conclusions in *Hoskins* about polygraphs still apply; they are unreliable and admission of their results risks usurping the role of the jury. These deficiencies make evidence of their results inadmissible under *Daubert*. Therefore, we will continue to apply the longstanding Arizona rule that the results of polygraph tests are per se inadmissible. *Hoskins*, 199 Ariz. 127, ¶ 69, 14 P.3d at 1014; *Ikirt*, 160 Ariz. at 115, 770 P.2d at 1161.

¶19          Perez complains that he was not allowed to present evidence concerning the polygraph's reliability. But the trial court has broad discretion to determine the reliability of evidence and need not conduct a hearing to make a *Daubert* decision. *See Ariz. State Hosp./Ariz. Cmty. Prot. & Treatment Ctr. v. Klein*, 231 Ariz. 467, ¶ 31, 296 P.3d 1003, 1010 (App. 2013). And because Perez did not claim that polygraphs have improved or

9

changed since *Hoskins*, the trial court properly could refuse to hold a hearing. *Id.* Furthermore, Perez did not make an offer of proof showing any change in the polygraph since *Hoskins* and has consequently waived that argument. *See* Ariz. R. Evid. 103.

**Hearsay Evidence**

**¶20** Perez next argues the court erred in allowing the prosecutor to cross-examine a witness based on transcripts of jail phone calls recorded between the witness and Perez. But he did not object below to this examination and therefore has, again, forfeited this argument absent fundamental, prejudicial error. *Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607 (failure to object to alleged error in trial court results in forfeiture of review for all but fundamental error). Because he does not argue on appeal that the alleged error is fundamental, and because we find no error that can be so characterized, the argument is waived. *See Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d at 140 (failure to argue fundamental error on appeal waives argument); *Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d at 650 (court will not ignore fundamental error if it finds it).

**Introduction of Jail Telephone Call Recordings**

**¶21** Perez next argues the introduction of recordings of telephone calls he made and received while in jail violated his Fourth and Sixth Amendment rights, as well as his right to Equal Protection under the Fourteenth Amendment. Although Perez filed a motion to suppress these phone calls below, the court never ruled on that motion. Instead, it ordered that the phone calls be disclosed to Perez. He made no record of this objection at trial. He has therefore not properly preserved these issues for appeal absent

fundamental, prejudicial error. *See State v. Lujan*, 136 Ariz. 326, 328, 666 P.2d 71, 73 (1983) (failing to make record as to disposition of motion in limine waives claim of error on appeal); *Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607. He does not argue the alleged error is fundamental, we do not find it to be, and therefore the argument is waived. *See Moreno-Medrano*, 218 Ariz. 349, ¶ 17, 185 P.3d at 140; *Fernandez*, 216 Ariz. 545, ¶ 32, 169 P.3d at 650.

### Limits on Cross-Examination of a Witness

¶22 Perez next argues the court improperly restricted his ability to cross-examine one of the state's witnesses. We review restrictions on the scope of cross-examination for an abuse of discretion. *State v. Fleming*, 117 Ariz. 122, 125, 571 P.2d 268, 271 (1977). We "will not disturb the court's ruling absent a clear showing of prejudice." *State v. Rodgers*, 134 Ariz. 296, 301, 655 P.2d 1348, 1353 (App. 1982).

¶23 Pursuant to a plea agreement, R.F., one of Perez's friends, agreed to provide truthful testimony for the prosecution in Perez's trial. During trial, defense counsel learned R.F. had had a meeting with the prosecutor several weeks prior and was released the following day. Counsel moved to cross-examine R.F. on the meeting to explore what benefit R.F. may have received from the meeting. Outside the presence of the jury, the prosecutor avowed to the court he had not agreed to R.F.'s pre-trial release the next day, there had been no further promises made to R.F. during the meeting, and that there was nothing to disclose. The court ruled that counsel could elicit the fact of the meeting but not cross-examine R.F. as to the contents of the meeting. Both sides then elicited testimony from R.F. about the potential great reduction in imprisonment to R.F.

11

under the plea agreement. R.F. further testified during cross-examination that he had met with the prosecutor in Perez's case and was released from pretrial custody the following day.

¶24 Perez claims the court erred by prohibiting him from cross-examining R.F. about the contents of the conversation between R.F. and Perez's prosecutor on the day before R.F.'s release. Nothing in the record suggests the prosecutor lied to the court and the jury was free to draw whatever inferences it chose from the sequence of events. Moreover, further testimony on this issue would have been cumulative because both sides had already established the strong incentives R.F. had for testifying against Perez. *See* Ariz. R. Evid. 403. Therefore Perez has failed to establish how this limitation prejudiced him. The court did not abuse its discretion in limiting the scope of R.F.'s cross-examination. *Rodgers*, 134 Ariz. at 301, 655 P.2d at 1353.

### Motion to Suppress

¶25 Perez finally argues the court erred in denying his motion to suppress statements he made during an interview because his statements were involuntary. We review the denial of a motion to suppress for an abuse of discretion. *State v. Zamora*, 220 Ariz. 63, ¶ 7, 202 P.3d 528, 532 (App. 2009). In our review, "we consider only the evidence presented at the suppression hearing and view it in the light most favorable to upholding the trial court's factual findings." *State v. Fornof*, 218 Ariz. 74, ¶ 8, 179 P.3d 954, 956 (App. 2008).

¶26 A confession is involuntary if, under the totality of the circumstances, the will of the defendant was overborne. *State v. Hall*, 120 Ariz. 454, 456, 586 P.2d 1266,

12

1268 (1978). Confessions are presumed to be involuntary and the state must show voluntariness by a preponderance of the evidence. *Id.* "A prima facie case for admission of a confession is made when the officer testifies that the confession was obtained without threat, coercion or promises of immunity or a lesser penalty." *State v. Jerousek*, 121 Ariz. 420, 424, 590 P.2d 1366, 1370 (1979).

¶27 At the suppression hearing, an investigator working for Perez's attorney testified that he arranged a "free talk" with the police. He defined a free talk as a meeting where "no promises [are] made" but one that allows the defendant "to give some information to the police" that the prosecutor and police can later evaluate "to see if they're going to give [the defendant] some kind of a plea." The investigator testified that there was no written agreement and that Perez was read his rights. He also stated he understood that "if any free talk was in place that any admission to a homicide is specifically exempt from immunity" and that if the defendant tells the police "about a violent crime that [he] participated in or a homicide, that's not free." The detective who conducted the interview testified that the defense had initiated the conversation, that he made no promises to Perez, that he read Perez his *Miranda* rights, and that he did not consider the interview a "free talk" with the "normal free talk rules." Perez, who did not testify at the hearing, offered no other evidence of police promises or coercion. Under these circumstances, we cannot say the trial court erred in denying Perez's motion to suppress his statements for lack of voluntariness. *See Hall*, 120 Ariz. at 456, 586 P.2d at 1268.

**Criminal Restitution Order**

¶28 Although neither party has raised this issue, we have discovered the sentencing minute entry provides that the "fines, fees, assessments and/or restitution" the court had imposed were "reduced to a criminal restitution order [CRO]." But as this court has determined, based on A.R.S. § 13-805(C), "the imposition of a CRO before the defendant's probation or sentence has expired 'constitutes an illegal sentence, which is necessarily fundamental, reversible error.'" *State v. Lopez*, 231 Ariz. 561, ¶ 2, 298 P.3d 909, 910 (App. 2013), *quoting State v. Lewandowski*, 220 Ariz. 531, ¶ 15, 207 P.3d 784, 789 (App. 2009). Therefore, because this portion of the sentencing minute entry is not authorized by statute, the CRO must be vacated.

**Conclusion**

¶29 For the foregoing reasons, we vacate the CRO but otherwise affirm Perez's convictions and sentences.

/s/ *Joseph W. Howard*

JOSEPH W. HOWARD, Chief Judge

CONCURRING:

/s/ *Garye L. Vásquez*

GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Michael Miller*

MICHAEL MILLER, Judge

14