IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*

*v.*

MICHAEL ANTHONY FAVELA,
*Appellant.*

No. 2 CA-CR 2013-0440
Filed April 8, 2014

---

Appeal from the Superior Court in Pima County
No. CR20123420001
The Honorable Jane L. Eikleberry, Judge

**AFFIRMED**

---

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By David A. Simpson, Assistant Attorney General, Phoenix
*Counsel for Appellee*

Nicole Farnum, Phoenix
*Counsel for Appellant*

---

**OPINION**

Chief Judge Howard authored the opinion of the Court, in which Presiding Judge Vásquez and Judge Miller concurred.

H O W A R D, Chief Judge:

¶1 After a jury trial, Michael Favela was convicted of aggravated robbery and kidnapping. On appeal, he argues the court erred in admitting expert testimony about a palm print found at the scene of the crime. For the following reasons, we affirm Favela's convictions and sentences.

## Factual and Procedural Background

¶2 We view the facts in the light most favorable to upholding the convictions. *See State v. Mangum*, 214 Ariz. 165, ¶ 3, 150 P.3d 252, 253 (App. 2007). After Favela and an accomplice entered L.F.'s apartment, they demanded to know where he kept drugs and money, restrained him, hit him in the face, and choked him. When Favela and his accomplice realized they could not find what they were looking for, they locked L.F. in his bedroom and threatened to shoot him if he tried to leave. They then left with L.F.'s television, car keys, jewelry, and wallet. When police arrived later, they searched for DNA[1] or fingerprint evidence. They did not find any usable DNA evidence but did find a "latent" palm print on the front door. The police later determined that the palm print matched Favela's hand.

¶3 Favela was charged and convicted as noted above and was sentenced to concurrent terms of imprisonment, the longest of which was 15.75 years. We have jurisdiction over his appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 13-4033(A)(1).

## Admissibility of Latent Palm Print Evidence

¶4 Favela argues the trial court erred in admitting expert testimony about the latent palm print the police found at the scene because it did not comply with the requirements of Rule 702, Ariz. R. Evid. We review a trial court's ruling to admit expert testimony for an abuse of discretion. *State v. Boyston*, 231 Ariz. 539, ¶ 14, 298 P.3d 887, 892 (2013).

---

[1]Deoxyribonucleic acid.

¶5        Rule 702 allows an expert to provide opinion testimony if:

> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)     the testimony is based on sufficient facts or data;
> (c)     the testimony is the product of reliable principles and methods; and
> (d)     the expert has reliably applied the principles and methods to the facts of the case.

The recent change of the rule in 2012 reflects a shift in Arizona to adopting the federal standard of admissibility of expert testimony set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See State v. Perez*, 233 Ariz. 38, ¶¶ 15-16, 308 P.3d 1189, 1193 (App. 2013). Before the rule changed in 2012, the admissibility of qualified expert testimony on fingerprint evidence had been settled since 1921. *See Moon v. State*, 22 Ariz. 418, 423-24, 198 P. 288, 290 (1921). In *Moon*, our supreme court stated that "'[s]cientific authority declares that finger prints are reliable as a means of identification,'" concluded evidence of matching fingerprints was admissible, but ultimately left the "weight and value of such testimony" to the jury. *Id.* at 423-24, 198 P. at 290, *quoting People v. Sallow*, 165 N.Y.S. 915, 918 (Crim. Ct. 1917). Since that time, it does not appear that the general reliability of expert testimony about fingerprint evidence has been seriously questioned in this state, nor has Favela directed us to any authority to that effect. To the contrary, our supreme court has sustained convictions based solely on expert testimony about fingerprint or palm print evidence because the evidence is sufficiently reliable. *See, e.g., State v. Rodriguez*, 192 Ariz. 58, ¶¶ 11-13 & n.4, 961 P.2d 1006, 1008-09 & n.4 (1998) ("At trial, uncontroverted expert testimony established that palm prints are identical to fingerprints with respect to their power to match and identify members of the population.").

¶6 Because our new standard of admissibility is based on federal law, we look to federal authority for guidance on whether *Daubert* has changed the landscape on the admissibility of expert testimony regarding latent fingerprint or palm print evidence. *See Perez*, 233 Ariz. 38, ¶ 17, 308 P.3d at 1194; Ariz. R. Evid. Prefatory Comment to 2012 Amendments ("Where the language of an Arizona rule parallels that of a federal rule, federal court decisions interpreting the federal rule are persuasive but not binding with respect to interpreting the Arizona rule."). The overwhelming consensus from federal jurisdictions is that, even when considered "[i]n terms of specific *Daubert* factors, the reliability of the technique has been tested in the adversarial system for over a century and has been routinely subject to peer review," and that "absent novel challenges, [expert testimony regarding] fingerprint evidence is sufficiently reliable to satisfy Rule 702 and *Daubert*." *United States v. John*, 597 F.3d 263, 274-75 (5th Cir. 2010); *see also United States v. Abreu*, 406 F.3d 1304, 1307 (11th Cir. 2005) (holding that expert testimony regarding fingerprint evidence satisfies *Daubert*); *United States v. Crisp*, 324 F.3d 261, 267-70 (4th Cir. 2003) (expert testimony on palm prints satisfies *Daubert* and equating palm print and fingerprint analysis); *United States v. Collins*, 340 F.3d 672, 682-83 (8th Cir. 2003) (expert testimony on fingerprint evidence satisfies *Daubert*); *United States v. Havvard*, 260 F.3d 597, 601 (7th Cir. 2001) (same); *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996) (same).

¶7 Favela has presented no novel challenge or argument to suggest a change in fingerprint technology or circumstance between *Moon* and this case would justify a change in Arizona's rule because of the shift to the *Daubert* standard.[2] Accordingly, our supreme court's conclusion in *Moon* about fingerprint evidence still applies: given the proper foundation, expert testimony on matching fingerprint evidence is admissible because it is reliable. *Moon*, 22

---

[2]Favela does not argue that there is a distinction between the reliability of fingerprint and palm print evidence, and both Arizona and federal case law have equated the two. *See Rodriguez*, 192 Ariz. 58, ¶ 11 & n.4, 961 P.2d at 1008 & n.4; *Crisp*, 324 F.3d at 265, 267-70.

Ariz. at 423-24, 198 P. at 290; *see also John*, 597 F.3d at 274-75; *Rodriguez*, 192 Ariz. 58, ¶ 11 & n.4, 961 P.2d at 1008 & n.4. That conclusion renders the testimony admissible under *Daubert*. We will therefore continue to apply the longstanding Arizona rule that expert testimony regarding fingerprint evidence is admissible. *Moon*, 22 Ariz. at 423-24, 198 P. at 290.

¶8        Favela complains however that the state "never established that the [holistic] method that the latent print examiner used in [Favela's] case is generally accepted in the scientific community" and that she did not "look[] for a minimum number of Galton points that matched." First, the rigid "general acceptance" standard for the admissibility of expert testimony, as a necessary prerequisite to admissibility, was explicitly rejected by *Daubert* because it was "at odds with the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to opinion testimony.'" 509 U.S. at 588-89, *quoting Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988). Instead, the Court "set out a number of non-exclusive factors for determining whether scientific evidence is admissible, including whether the scientific methodology has been tested and subjected to peer review, the 'known or potential rate of error,' and whether the methodology has 'general acceptance.'" *Ariz. State Hosp./Ariz. Cmty. Prot. & Treatment Ctr. v. Klein*, 231 Ariz. 467, ¶ 27, 296 P.3d 1003, 1009 (App. 2013), *quoting Daubert*, 509 U.S. at 593-94.

¶9        The examiner testified the current best practice, based on her experience, training, and certification with the International Association for Identification, is to look at the entire print rather than to focus exclusively on individual points. She stated that points of a print are a "very small piece of the puzzle," and that to reach a conclusion an examiner must look at those points in the context of the entire print, including three different levels of detail and the quality of the latent print. She also testified that a second examiner was required to review her finding before she reported it, and that the second examiner agreed with her conclusion. And she testified that the error rate for false positives was "0.1 percent." This testimony was sufficient, for purposes of Rule 702(c), for the trial court to find that "the testimony [was] the product of reliable

principles and methods." If Favela wished to present a competing viewpoint on print analysis, he could have done so.

¶10 Favela also appears to argue that the expert's testimony here implied that the match she found "meant a 100% match" and its admission misled the jury. Although unclear, we presume this argument is rooted in Rule 702(d), regarding the reliable application of the methods to the facts of the case. Whatever problems might exist with actual testimony of a "certain" match, the expert here made no such claim. Instead, she testified—in response to questions from the jury—that mistakes are possible, including false positive matches which she conceded had been made in past cases, and that "whenever you have people involved in a process" there is a chance of error. The jury was free to weigh this testimony against the expert's claim that she had found a match. *See Moon*, 22 Ariz. at 423, 198 P. at 290.

¶11 Favela finally argues the trial court should have held a hearing "[b]efore admitting the testimony" in order for the state to establish the method used "actually met the scientific basis required by the evidentiary standards of Rule 702 and *Daubert*." But as we recently stated, "the trial court has broad discretion to determine the reliability of evidence and need not conduct a hearing to make a *Daubert* decision." *Perez*, 233 Ariz. 38, ¶ 19, 308 P.3d at 1194; *accord John*, 597 F.3d at 274-75 (absent novel challenge, trial court need not conduct *Daubert* hearing on fingerprint evidence).

¶12 Furthermore, despite criticism of the lack of scientific rigor that underlies fingerprint matching, "errors in fingerprint matching by expert examiners appear to be very rare. Of the first 194 prisoners in the United States exonerated by DNA evidence, none had been convicted on the basis of erroneous fingerprint matches, whereas 75 percent had been convicted on the basis of mistaken eyewitness identification." *United States v. Herrera*, 704 F.3d 480, 487 (7th Cir. 2013). Thus, Favela's attack on the scientific validity of fingerprint examination did not reasonably draw into question the reliability of the method's results. Accordingly, the trial court did not abuse its discretion in declining to hold a *Daubert* hearing.

## Disposition

¶13 For the foregoing reasons, Favela's convictions and sentences are affirmed.