NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*

*v.*

JIMMY WAYNE GUINARD, *Appellant*.

No. 1 CA-CR 14-0810
FILED 8-11-2015

Appeal from the Superior Court in Yavapai County
No. P1300CR2012-00975
The Honorable Tina R. Ainley, Judge

**AFFIRMED AS CORRECTED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

David Goldberg, Esq., Fort Collins, CO
By David Goldberg
*Counsel for Appellant*

Jimmy Wayne Guinard, Douglas
*Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Patricia K. Norris delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Kent E. Cattani joined.

---

**N O R R I S,** Judge:

¶1         Jimmy Wayne Guinard timely appeals from his convictions and sentences for one count of Transportation of Dangerous Drugs for Sale (Methamphetamine), a class 2 felony, and one count of Possession of Methamphetamine Drug Paraphernalia, a class 6 felony. After searching the record on appeal and finding no arguable question of law that was not frivolous, Guinard's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), asking this court to search the record for fundamental error. This court granted counsel's motion to allow Guinard to file a supplemental brief *in propria persona*, and he did so. We reject the arguments raised in Guinard's supplemental brief and, after reviewing the entire record, find no fundamental error. Therefore, we affirm Guinard's convictions and sentences as corrected.

### FACTS AND PROCEDURAL BACKGROUND[1]

¶2         The State charged Guinard with committing one count of transportation of methamphetamine for sale and one count of possession of drug paraphernalia when, on April 26, 2012, he gave a police informant a "sample" of methamphetamine packaged in a plastic baggie. The State also charged Guinard with one count of transportation of methamphetamine for sale and one count of possession of drug paraphernalia when, on May 14, 2012, Guinard sold the same informant $40 worth of methamphetamine, also packaged in a plastic baggie. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 13-3407 (Supp. 2014), -3415 (2010).[2]

---

[1]We view the facts in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against Guinard. *See State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

[2]Although the Arizona Legislature has amended certain statutes cited in this decision after the date of Guinard's offenses, the

¶3          A jury found Guinard guilty of the May 14, 2012 transportation and possession counts, but not guilty of the April 26, 2012 transportation and possession counts. The superior court sentenced Guinard to a mitigated term of five years' flat time imprisonment on the transportation count and .75 years' imprisonment on the paraphernalia count. The court ordered the sentences to run concurrently to each other and consecutive to a term of imprisonment in an unrelated case and awarded Guinard 781 days of presentence incarceration credit.

## DISCUSSION

I.      Supplemental Brief[3]

        A.      Sufficiency of the Evidence

¶4          In his supplemental brief, Guinard argues the superior court abused its discretion in denying his Rule 20 motion because the State failed to test the methamphetamine baggies for his fingerprints and DNA, thereby presenting insufficient evidence to support his convictions.

¶5          Although the State did not test the methamphetamine baggies for Guinard's DNA and fingerprints, it was under no obligation to do so, and it presented substantial evidence supporting the jury's verdicts. *See State v. Torres*, 162 Ariz. 70, 76, 781 P.2d 47, 53 (1989) ("Police generally have no duty to seek out and obtain potentially exculpatory evidence." (citation omitted)); *see also State v. Kuhs*, 223 Ariz. 376, 382, ¶ 24, 224 P.3d 192, 198 (2010) (appellate court reviews sufficiency of the evidence by determining whether jury's findings are supported by substantial evidence; that is, evidence that is adequate to support a reasonable person's conclusion of defendant's guilt beyond a reasonable doubt); *State v. Henry*, 205 Ariz. 229, 232, ¶ 11, 68 P.3d 455, 458 (App. 2003) (substantial evidence may be direct or circumstantial; denial of Rule 20 motion reviewed for abuse of discretion). At trial, the police informant testified he had worked with police under contract after the State charged him with selling methamphetamine. The contract required the informant to assist police in apprehending other drug dealers. To that end, on April 26, 2012, the informant went to Guinard's home and asked "about meth." Guinard then handed the informant a "sample" of methamphetamine, which the

---

revisions are immaterial to the resolution of this appeal. Thus, we cite to the current version of these statutes.

[3]For clarity, we have reordered and restated the arguments Guinard raised in his supplemental brief.

informant turned over to Detective J. The informant was not wired at the time Guinard gave him the sample.

¶6            On May 14, 2012, Detective J assisted the informant in setting up a "controlled buy" with Guinard. Detective J recorded the informant's side of a phone call with Guinard, and the informant could be heard saying, "Hey Jimbo"—Guinard's nickname—and asking to buy some "shit"—a slang term for methamphetamine. After the informant and Guinard established a meeting place, Detective J wired the informant, conducted a thorough search of the informant and his Jeep for drugs and money, gave him $40 to buy the methamphetamine, and followed him to the meeting place.

¶7            Detective J saw the informant meet Guinard's brother in the parking lot and observed the two walk to a parked truck. Immediately after the controlled buy, the informant handed Detective J a baggie of methamphetamine, which the informant said he had bought from Guinard. The baggie of methamphetamine the informant gave to Detective J looked like "it was worth $40.00." Thus, even though the State did not test the methamphetamine baggies for Guinard's DNA and fingerprints, it presented sufficient evidence supporting Guinard's convictions, and the superior court did not abuse its discretion in denying his Rule 20 motion.[4]

        B.      The Informant's Credibility

¶8            Guinard also argues the State should have polygraph and drug tested the informant "to either uphold or diminish [his] credibility to testify truthfull[y]," and because the State failed to do so, the informant was not credible. We disagree with Guinard's argument for three reasons. First, polygraph test results are categorically inadmissible at trial absent a stipulation. *State v. Perez*, 233 Ariz. 38, 42, ¶ 16, 308 P.3d 1189, 1193 (App. 2013). Second, the State's failure to test the informant "without further evidence of materiality to the guilt or innocence of the defendant constitutes no error." *State v. Rhodes*, 112 Ariz. 500, 504, 543 P.2d 1129, 1133 (1975).

¶9            Third, whether the informant was credible was an issue for the jury to decide. *See State v. Cid*, 181 Ariz. 496, 500, 892 P.2d 216, 220 (App.

---

[4]Guinard also argues the superior court abused its discretion in denying his post-trial motion to dismiss with prejudice or for a new trial. Based on this record, the superior court did not abuse its discretion in denying Guinard's post-trial motion. *See State v. Spears*, 184 Ariz. 277, 289, 908 P.2d 1062, 1074 (1996); *State v. Wills*, 177 Ariz. 592, 593, 870 P.2d 410, 411 (App. 1993).

1995) ("The finder-of-fact, not the appellate court . . . determines the credibility of witnesses."). And indeed, Guinard vigorously attacked the informant's credibility during trial. For example, in his cross-examination of the informant, Guinard highlighted several inconsistencies in the informant's testimony regarding the May 2012 controlled buy. Guinard also established the informant had failed drug tests in July, September, and November 2013, which resulted in a probation violation and 60 days' imprisonment in early 2014. The informant testified his drug test results were positive for methamphetamine because of prescription drugs he was taking, but Guinard presented evidence impeaching that testimony. Further, Detective J and the informant both testified the State had not polygraph or drug tested the informant.

**¶10** Thus, even though the State did not polygraph or drug test the informant, Guinard was able to argue to the jury the informant "sat in this courtroom and lied."

### C. Severance

**¶11** Guinard next argues the superior court should have severed the April 26, 2012 counts from the May 14, 2012 counts, and because it failed to do so, it prejudiced him. As we construe Guinard's argument, he was entitled to severance as a matter of right under Arizona Rule of Criminal Procedure 13.4(b) because the counts were joined solely by virtue of Rule 13.3(a)(1).[5] Because Guinard objected to the joinder and timely renewed his objection, we review the superior court's denial of his motion to sever for an abuse of discretion, and, as we explain, even if we assume arguendo the superior court should have severed the April counts from the May counts, Guinard was not prejudiced. *See State v. Burns*, 237 Ariz. 1, —, ¶ 29, 344 P.3d 303, 315 (2015) (appellate court reviews for abuse of discretion and will reverse only if defendant can show "compelling prejudice against which the trial court was unable to protect" (citation omitted) (internal quotation marks omitted)); *see also* Ariz. R. Crim. P. 13.4.

**¶12** First, the jury found Guinard not guilty on the April counts. Second, the superior court properly admitted evidence of the April counts to explain the background for the controlled buy and, thus, the May counts. *See State v. Price*, 123 Ariz. 166, 168, 598 P.2d 985, 987 (1979) ("Evidence of other criminal acts is admissible when so blended or connected with the

---

[5]The superior court also found joinder proper under Rule 13.3(a)(2) and (3). Because, as discussed, Guinard was not prejudiced by the joinder of the counts, we do not need to address whether joinder was proper under 13.3(a)(2) and (3).

crime of which defendant is accused that [p]roof of one incidentally involves the other or explains the circumstances of the crime." (citation omitted)).

¶13 Third, the superior court properly instructed the jury on the State's burden of proof as to each element of each count and that it should consider each count separately. And fourth, the likelihood that the jury confused the counts was minimal, especially because, as noted, the jury found Guinard not guilty on the April counts.[6] *See State v. Comer*, 165 Ariz. 413, 418, 799 P.2d 333, 338 (1990). Therefore, under these circumstances, Guinard was not prejudiced by the superior court's refusal to sever the counts against him.

### D. Prosecutorial Misconduct

¶14 Guinard next argues the prosecutor committed a "pattern of intentional errors made to strengthen [the] State's case," which, collectively viewed, amount to prosecutorial misconduct. *See State v. Anderson*, 210 Ariz. 327, 340, ¶ 45, 111 P.3d 369, 383 (2005) ("We will reverse a defendant's conviction because of prosecutorial misconduct if two conditions are satisfied: (1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying the defendant a fair trial." (citation omitted) (internal quotation marks omitted)). Although, as we explain, misconduct occurred, the cumulative effect of the misconduct did not deprive Guinard of a fair trial. *See State v. Morris*, 215 Ariz. 324, 335, ¶ 47, 160 P.3d 203, 214 (2007) (whether "persistent and pervasive misconduct" occurred depends on cumulative effect of alleged errors (citation omitted)).

#### 1. Vouching

¶15 Guinard argues the prosecutor vouched during closing argument and the superior court failed to take "curative measures," including instructing the jury to disregard the prosecutor's "specific erroneous statements." Impermissible prosecutorial vouching occurs when, as relevant here, "the prosecutor places the prestige of the

---

[6]During trial, the parties stipulated the drugs Detective J identified during his testimony were "the same drugs that went to the lab." The preliminary and final jury instructions regarding the stipulation should have, but did not, explain to the jury that it was free to accept or reject the stipulation, just as any other evidence. *See State v. Allen*, 223 Ariz. 125, 127 n.2, ¶ 11, 220 P.3d 245, 247 n.2 (2009); Rev. Ariz. Jury Instr. ("RAJI") Stand. Crim. 3.

government behind its witness." *State v. Bible*, 175 Ariz. 549, 601, 858 P.2d 1152, 1204 (1993).

¶16 The first instance of alleged prosecutorial vouching occurred in closing argument, when the prosecutor stated, "The State seeks the truth in this matter and only wants to see the truth come out. *It's the State's belief the truth is that [Guinard] transferred meth and sold methamphetamine on the dates referenced . . . .*" (emphasis added). Guinard's counsel asked to approach and said, "I'm not going to ask for a mistrial at this point, but I have every right to do it because that is highly improper . . . ."

¶17 The next instance of alleged prosecutorial vouching occurred during the State's rebuttal closing argument, when the prosecutor stated, "It's been presented to you that the State is not serving justice or is doing something improper. The State seeks the truth and will endure whatever the consequences may be. *If the State believed [Guinard] was innocent, [the] State would have dismissed the charges long ago.*" (emphasis added). The prosecutor then argued:

> *It's the State's belief*, after you look at each and every piece of evidence . . . that was presented on the stand, that you look at [the informant] as you observed him here on the stand, and his testimony, his demeanor, that he was truthful in telling you . . . exactly what occurred both those days. *State believes* it's presented sufficient evidence to leave each and every one of you firmly convinced of [Guinard's] guilt[].

(emphasis added). Guinard's counsel objected after the prosecutor concluded but once again declined to move for a mistrial, stating, "I don't want a mistrial, because I think that the evidence is very strong in the favor, for the lack of evidence, of Mr. Guinard . . . ."

¶18 The quoted statements italicized above did indeed place the prestige of the government behind its witnesses and thus constituted impermissible vouching.[7] It was improper for the prosecutor to preface his remarks with variations of "the State's belief." The prosecutor, however, did not simply state his personal belief during closing and rebuttal arguments. He presented his argument in the context of the trial evidence

---

[7]Guinard also argues the prosecutor's closing argument concerning the phone calls between the informant and Guinard constituted vouching. The argument, however, was proper in light of the trial evidence.

and told the jury, "What this case comes down to is the credibility of [the informant], and it's your job to judge the credibility." *See State v. Corona*, 188 Ariz. 85, 91, 932 P.2d 1356, 1362 (App. 1997) (prosecutor's remarks that witnesses testified "truthfully," when viewed in context, were sufficiently linked to trial evidence).

**¶19**　　　Further, the superior court properly instructed the jury that the lawyers' arguments were not evidence and it was to determine the "accuracy" of the witnesses' testimony. Our supreme court has instructed that we are to presume jurors follow the court's instructions. *See Morris*, 215 Ariz. at 336-37, ¶ 55, 160 P.3d at 215-16 (superior court may cure error resulting from prosecutorial misconduct by instructing jury not to consider attorneys' arguments as evidence). Thus, the superior court cured any error in prosecutorial vouching through its instructions.

## 2.　　Untimely Disclosure

**¶20**　　　Guinard also argues the State prejudiced him by disclosing "critical impeachment evidence . . . on the eve of trial," and, relatedly, the superior court abused its discretion in failing to impose sanctions. We disagree with both arguments.

**¶21**　　　On the first day of trial, the State disclosed that Detective J had told the prosecutor he "believe[d]" the informant was referred to Silent Witness in order to collect money to assist the informant in "leav[ing] town" because arrests were going to be made. While Detective J did not have any records of the informant being referred to Silent Witness, "he believe[d] that [was] what occurred in this particular case." Guinard moved to preclude this information because, ten days earlier during a defense interview, Detective J had stated he could not remember if the informant had been referred to Silent Witness. The superior court, on the record before it, denied Guinard's preclusion request, but did admonish the prosecutor and offered Guinard the option of continuing the trial or taking a recess to re-interview Detective J. Guinard rejected the court's options and instead asked that he be allowed to call "the head of Silent Witness" as a defense witness. The court allowed the additional witness "as a sanction in this case," and thus Guinard's argument that the superior court failed to impose sanctions is without merit. *See State v. Delgado*, 174 Ariz. 252, 257, 848 P.2d 337, 342 (App. 1993) (superior court should use preclusion as a last resort, but otherwise has wide latitude in determining whether to impose sanctions and choice of sanctions for discovery violation); *see also* Ariz. R. Crim. P. 15.7.

¶22        Further, Guinard thoroughly cross-examined Detective J and the informant on the informant's receipt of Silent Witness money.  During cross-examination, Detective J testified consistently with his defense interview—he could "not recall the Silent Witness stuff."  The informant testified it was Detective J who told him to get in touch with Silent Witness and that he was paid $400 for Guinard's arrest.  And, in closing argument, Guinard argued the informant had "plenty of reasons to set [him] up," including receiving money for his arrest.  Under these circumstances, the State did not prejudice Guinard through its untimely disclosure.[8]

### 3.        Cumulative Effect

¶23        Although, as discussed, we agree with Guinard that part of the prosecutor's closing and rebuttal argument constituted impermissible vouching, the prosecutor did not engage in "persistent and pervasive misconduct" so as to deprive Guinard of a fair trial.  *See Morris*, 215 Ariz. at 339, ¶ 67, 160 P.3d at 218; *cf. State v. Hughes*, 193 Ariz. 72, 78-79, 88, ¶¶ 24-26, 74, 969 P.2d 1184, 1190-91, 1200 (1998) (defendant deprived of fair trial based on cumulative effect of prosecutor's comment on defendant's failure to testify; argument outside the record; allegation defendant fabricated insanity defense; and appeal to jurors' fears).

### E.        Biased Trial Judge

¶24        Guinard also argues the trial judge was "partial and bias [sic] toward [him] with the evidence being obvious[ly]" in his favor.  After reviewing the record, we find no merit in this argument.  *See State v. Carver*, 160 Ariz. 167, 173, 771 P.2d 1382, 1388 (1989) ("Appearance of interest or prejudice is more than the speculation suggested by the defendant.  It occurs when the judge abandons his judicial role and acts in favor of one party or the other.").

### F.        Ineffective Assistance of Counsel

¶25        Finally, Guinard argues his trial counsel was ineffective because, first, he failed to move for a mistrial based on the State's late disclosure and prosecutorial vouching during closing argument, and second, he did not "compel" the State to produce exculpatory DNA and

---

[8]Guinard also points to the State's failure to test the methamphetamine baggies for his DNA and fingerprints and polygraph and drug test the informant, *see supra* ¶¶ 5, 8, as evidence of prosecutorial misconduct.  We reject this argument because, as discussed, the State was under no obligation to conduct such testing.

fingerprint evidence that the State either did or should have obtained from the methamphetamine baggies surrendered by the police informant. These arguments are not properly before us. *See State ex rel. Thomas v. Rayes*, 214 Ariz. 411, 415, ¶ 20, 153 P.3d 1040, 1044 (2007) ("[D]efendant may bring ineffective assistance of counsel claims *only* in a Rule 32 post-conviction proceeding—not before trial, at trial, or on direct review.").

II.     Anders Review

**¶26**         We have reviewed the entire record for reversible error and find none. *See Leon*, 104 Ariz. at 300, 451 P.2d at 881. Guinard received a fair trial. He was represented by counsel at all stages of the proceedings and was present at all critical stages.

**¶27**         As discussed, the evidence presented at trial was substantial and supports the verdicts. The jury was properly comprised of 12 members and the court properly instructed the jury on the elements of the charges, Guinard's presumption of innocence, the State's burden of proof, and the necessity of a unanimous verdict. Guinard waived a presentence report, was given an opportunity to speak at sentencing, and his sentences were within the range of acceptable sentences for his offenses.

**¶28**         The record reflects, however, that Guinard was entitled to additional presentence incarceration credit. Guinard requested, and the superior court awarded, 781 days of presentence incarceration credit. Our review of the record, however, reveals that Guinard was entitled to 789 days of presentence incarceration credit. Guinard was taken into custody for these charges on September 6, 2012. After posting a $50,000 secured appearance bond, Guinard was released on October 5, 2012—for a total of 30 days presentence incarceration credit. On October 14, 2012, the bail bond agent surrendered Guinard for failure to comply with the conditions of his release. Guinard remained in custody until the date of his sentencing, November 12, 2014—for a total of 759 days of presentence incarceration credit. Thus, we correct the record to reflect 789 days of presentence incarceration credit.

**CONCLUSION**

**¶29**         We decline to order briefing and affirm Guinard's convictions and sentences as corrected.

**¶30**         After the filing of this decision, defense counsel's obligations pertaining to Guinard's representation in this appeal have ended. Defense counsel need do no more than inform Guinard of the outcome of this appeal

and his future options, unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85, 684 P.2d 154, 156-57 (1984).

**¶31** Guinard has 30 days from the date of this decision to proceed, if he wishes, with an *in propria persona* petition for review. On the court's own motion, we also grant Guinard 30 days from the date of this decision to file an *in propria persona* motion for reconsideration.



Ruth A. Willingham · Clerk of the Court
FILED: RT