682 P.2d 417

STATE of Arizona, Appellee,

v.

**Rufus Edward ALLEN, Appellant.**

No. 5928.

Supreme Court of Arizona,
En Banc.

May 9, 1984.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, and Linda A. Akers, Asst. Attys. Gen., Phoenix, for appellee.

George M. Sterling, Jr., and John Antieau, Phoenix, for appellant.

HAYS, Justice.

Appellant, Rufus Edward Allen, was tried by jury and convicted of first degree murder. *See* A.R.S. § 13–1105(A)(1). He was sentenced to life imprisonment without possibility of parole for 25 years. *See* A.R.S. § 13–703(A). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3); A.R.S. § 13–4031; and A.R.S. § 13–4035.

The record reveals that on June 8, 1982 the victim assaulted Allen with a gun. Allen fled and escaped unharmed. Later that day Allen returned to the scene. The victim was seated leaning against a building, speaking with Frankie Mae Johnson. Allen approached the victim and revealed that he had a gun. Johnson rose to leave when she saw Allen approach. Allen hit, kicked, then fatally shot the victim. Allen fled.

A gun was found in an alley a short distance from the scene. The ballistics expert testified that the fatal bullet was damaged and he could not be certain the bullet came from that gun. He did testify it could have come from the gun. Allen's fingerprint was found on the stock. Other clear but unidentified prints were also found on the gun.

There were two eyewitnesses to the homicide. One was Frankie Mae Johnson, who had been sitting and talking with the victim immediately before the shooting, and Antwaine Owens, a thirteen-year-old boy who was playing in his yard next door to where the incident took place. Additional facts will be discussed as necessary.

Allen raises only one issue on appeal. He argues that a letter he wrote to his girlfriend, Sheena Nelson, should not have been admitted into evidence and its introduction into evidence constitutes reversible error.

In the letter, Allen asked if Nelson and another woman would testify falsely at trial for him. Allen requested that they testify that Johnson had a motive for testifying against Allen, thereby impeaching Johnson's testimony.

The letter was discovered before trial by the state and was admitted, over objection, into evidence. Neither Nelson nor the other woman testified.

At trial, Allen was confronted with the letter and he testified: "I wanted them to come here and lie against Frankie Mae. I did not want them to come in here to verify no story for me." In this court, Allen argues that the letter was irrelevant and inadmissible because he did not seek to fabricate substantive evidence. He states that because he only tried to fabricate impeachment evidence the letter deals with a

collateral matter and was not relevant to the case. Alternatively, he states that if the letter was relevant it was nevertheless inadmissible as unduly prejudicial. The state argues that Allen's unsuccessful attempt to procure false testimony of any kind is relevant because it tends to show he was conscious of guilt.

■ The relevancy and admissibility of evidence is decided by the trial judge. *See State v. Smith,* 136 Ariz. 273, 276, 665 P.2d 995, 998 (1983). We will not disturb the ruling of the trial judge unless there is a clear abuse of discretion. *Id.*

■ Relevant evidence is defined as evidence which has a tendency to prove or disprove a material fact at issue. 17 A.R.S., Arizona Rules of Evidence, rule 401. This evidence was relevant. In *State v. Adair,* 106 Ariz. 4, 469 P.2d 823 (1970), we said evidence that a defendant has tried to procure false testimony is an admission. *Cf. State v. Settle,* 111 Ariz. 394, 531 P.2d 151 (1975) (attempt to suppress adverse evidence indicates a consciousness of guilt); *see also State v. Bravo,* 131 Ariz. 168, 169, 639 P.2d 358, 359 (App.1981) ("[e]vidence that a defendant attempted to influence the testimony of a witness against him tends to show a consciousness of guilt."); McCormick on Evidence, § 273, at 660 (2d Ed. 1972) ("By resorting to wrongful devices he is said to give ground for believing that he thinks his case is weak and not to be won by fair means.") In this case, Allen wrongfully tried to procure a witness who would falsely testify with the goal of impeaching an important state witness. We think the attempt to procure a witness with the express purpose of testifying falsely is relevant. This is true whether the false testimony is sought to be used for impeachment or substantive purposes. The evidence is not irrelevant because the putative perjurers do not testify. The attempt is relevant irrespective of its success.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Rule 403. As noted above, admissibility of evidence is left to the sound discretion of the trial judge. *See Smith, supra.* Allen claims the evidence is inadmissible for three reasons: he suffered the effects of the letter and received none of its expected benefits; the evidence of his guilt was equivocal, thus increasing the possibility that the "illusion of guilt" was strengthened by the use of the letter; and portions of the letter contained extraneous statements which were prejudicial.

Allen's first argument, that the letter can be used against him only if he actually uses the perjured testimony, is ludicrous and is rejected. We reject Allen's second argument also. The evidence is not equivocal. There were two eyewitnesses, Allen's fingerprint was on the probable murder weapon, and he made inculpatory statements to the police. He told the police that if he had had a gun when the victim chased him earlier he would have used violence against the victim then. When arrested Allen told police "I thought you'd be looking for me." He also told the victim's brother before the shooting "I am not running from your brother no more." Although the letter was damaging, we think, on this record, it was not unfairly prejudicial. Finally, Allen claims that his apparent admission in the letter that he had procured false testimony before was unduly prejudicial and should have been excluded. We disagree.

As noted above, there is substantial evidence to support the verdict. Assuming the jury believed that Allen had procured false testimony in the past, it could not have affected the verdict. That portion of the letter would tend to make the fact that Allen tried to elicit false testimony in this case more believable, but Allen admitted that he tried to elicit false testimony in this case while he was on the stand. Finally, that portion of the letter, Allen claims, shows he has had difficulty with the law before. We do not think the existence of this inference constitutes error. The letter does not indicate whether the previous court case was civil or criminal in nature. Thus, the letter does not impeach Allen as a convicted felon. Because we agree with

the trial judge's determination on admissibility, we find no abuse of discretion.

## FUNDAMENTAL ERROR REVIEW

■ In each criminal case appealed to this court, we independently review the record for fundamental error. *See* A.R.S. § 13–4035. In our review of this case we think it is necessary to discuss an issue not raised by the parties. The issue is whether some of defendant's statements were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The record reveals that on June 8, 1982, Allen was assaulted by the victim during the day. Allen called the police and went with the police to look for the victim. The victim could not be found. While the officer was making a telephone call, he overheard Allen tell some people in the area that "if he had a gun it wouldn't have happened and next time it happens, he would have a gun."

On the evening of the 8th the homicide occurred. On the morning of the 9th, Allen was arrested. *Miranda* warnings were administered and no questions were asked by the arresting officer. Allen stated, not in response to any question, that he thought the police would be looking for him. When he arrived at the police station, *Miranda* warnings were administered by a different officer. He asked if Allen wanted to talk about the homicide, but Allen replied he did not. The officer then asked if Allen wanted to talk about the assault, and Allen agreed.

During this interview, Allen stated that if he had had a gun during the assault he would have killed the victim then. The officer also wanted to discuss the clothes Allen was wearing on the night of the homicide. Allen told the officer that he left the vest, shirt and shoes he wore on the night of the homicide at his girlfriend's house. This was inconsistent with his trial testimony. At the voluntariness hearing, the officer testified that he hoped to obtain statements concerning the homicide by talking about the assault. The officer also testified that on its own merits, the assault was no longer relevant as the perpetrator was dead. Thus, it continued to be relevant only as it concerned the homicide.

This case is analogous to *State v. Hensley,* 137 Ariz. 80, 669 P.2d 58 (1983). In *Hensley,* defendant asked for counsel and refused to talk about the robbery under investigation; however, he was willing to talk about another aspect of the case. We found the police interrogation "inextricably related to the ... robbery," *id.* at 86, 669 P.2d at 64, and we found that the focus of the interrogation was to obtain inculpatory statements concerning the robbery. We held that continuing to question a defendant on subjects related to the subject for which the accused has requested counsel is inconsistent with *Miranda.* We noted that we had (and still have not) not addressed a claim under *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (interrogation on unrelated subjects is permissible after invocation of rights to silence). The difference between *Hensley* and the instant case is that Allen did not request counsel. But we find the logic of *Hensley* compelling.

■ We hold that when an accused chooses to remain silent on a subject he may not be questioned concerning that subject or related subjects. A related subject is one that the discussion of which would naturally result in inculpatory statements concerning the subject for which the accused invoked his right to silence. Whether a subject is related is determined by using an objective standard. The subjective intent of the officer and the subjective expectation of the accused are irrelevant.

■ Because the assault was relevant only as it inculpated Allen on the homicide, it was a related subject. Allen's right to remain silent was, therefore, violated; however, reversal is not required.

Allen's statement that he would have used violence against the victim during the assault if he, Allen, had had a gun, was properly admitted into evidence through the testimony of the officer who investigat-

ed the assault. Because the evidence was properly before the jury, we find that the admission of the similar, yet inadmissible, statement by another witness is not prejudicial. *See State v. Hensley,* 137 Ariz. 80, 89, 669 P.2d 58, 67 (1983). The judge who presided over the voluntariness hearing found all of Allen's statements, including the statement concerning Allen's clothes, to be voluntary; therefore, reversal is not required for the *Miranda* violation absent prejudice. *See Hensley, supra,* at 88, 669 P.2d at 66.

The state sought to show that Allen disposed of the clothes he was wearing the night of the homicide in order to avoid detection. Allen testified at trial that he left his clothes at a telephone booth and someone took them.

We do not find the admission of the statement concerning Allen's clothes to be reversible error because it simply was not an important issue in the case. No two witnesses totally agreed on what clothes the killer wore. Allen's witnesses did not accurately describe Allen's clothes either. The two eyewitnesses did not rely on Allen's clothing to identify him; one relied on his distinctive hair style and the other recognized Allen's face. In sum, Allen's clothing was not important, nor was the implication the state sought to make. We find, beyond a reasonable doubt, that absent the error, the jury would have returned a verdict of guilty.

We find no reversible fundamental error. *See* A.R.S. § 13–4035. The judgment of conviction and the sentence are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and CAMERON and FELDMAN, JJ., concur.