770 P.2d 1159

**STATE of Arizona, Appellee,**

v.

**Jeffrey Lynn IKIRT, Appellant.**

**No. CR–86–0201–PR.**

Supreme Court of Arizona,
En Banc.

April 21, 1987.
Supplemental Opinion Jan. 17, 1989.
As Amended March 30, 1989.

Robert K. Corbin, Atty. Gen. By Bruce M. Ferg, Asst. Atty. Gen., Phoenix, for appellee.

Robert Arentz, Cochise County, Public Defender, Perry L. Hicks, former Cochise County Public Defender by Wallace R. Hoggatt, Deputy Cochise County Public Defender, Bisbee, for appellant.

HOLOHAN, Justice.

We granted the state's petition for review to decide whether the Court of Appeals erred in reversing the defendant's

**114**

convictions because the state produced testimony of a witness' failure to take a polygraph examination.

The facts necessary for the resolution of this case follow. Jeffrey Ikirt, former son-in-law of Peter Lozano, was charged with arson, burglary, and criminal damage in connection with the burning of the Lozano residence.

At trial, three experts testified for the state that the fire was the result of arson rather than accident. The state's case rested entirely upon circumstantial evidence against Ikirt, demonstrating that he had been involved in a bitter divorce and visitation battle with Lozano's daughter; that he had threatened the lives of his former wife and her parents; that he had hit Lozano during an argument; that he had earlier threatened to burn or destroy the house; that he did not deny guilt when his sister-in-law accused him of destroying the house; and that a truck resembling his was seen driving back and forth near the Lozano house with its lights off shortly before the fire was detected.

The Lozano house had been set afire sometime before 8:40 p.m. Ikirt presented evidence to support an alibi defense. His mother testified that he was at her home in Tombstone at 8:45 p.m. the evening of the fire. Michael Lennon, a friend of Ikirt's, testified that he had seen Ikirt in front of a Tombstone saloon that evening at about 9:00 p.m. for about five to ten minutes. Tombstone's then-deputy marshal testified that he had seen Jeff outside a bar sometime between 9:20 and 9:35 p.m. The owner of another bar testified that he had seen Ikirt in his bar around 10:00 or 10:30 p.m.

Lynn Curry, a state's witness, testified that after the fire on Memorial Day, 1984, Ikirt came into the restaurant where she worked and spoke with Michael Lennon and her husband-to-be, Jim Curry. Lynn testified that Ikirt said that he and Tommy Gilbert had set the fire, and that he needed Lennon and Curry to say that he was with them the night of the fire because he had used them as alibis when talking to sheriff's department detectives. Lynn's testimony was controverted by Lennon, who

testified that the conversation related by Curry never took place. Lennon stated that Ikirt had never admitted setting a fire or hiring anyone to set it for him.

During his testimony, Lennon stated that a Detective Kellogg interviewed him at the hospital about a week and a half after the fire where he was recovering from a severe beating. Lennon testified as follows:

Q [Defense Counsel] Mr. Lennon, do you remember Mr. Kellogg indicating a particular interest to get information to convict Jeff Ikirt?

\*    \*    \*    \*    \*    \*

The Witness: Yes. He asked me if I knew who started the fire and he told me that he didn't want anybody else that was involved, if I knew, that he just wanted Jeff Ikirt; and if I would take a lie detector test for him.

I told him that I—

Mr. Behrens [Defense Counsel]: Okay.

Mr. Brew [Prosecutor]: Your honor, may we have a conference at the bench?

The Court: Yes. Come on.

The following dialogue took place at the bench conference:

Mr. Brew: This man refused to take a polygraph test. He's just indicated to the jury that he was asked to take the polygraph test and I think I'm entitled to get that in at this point.

The Court: Why are we going into all of this?

Mr. Behrens: I was ready to say "No further questions." I had alerted him not to mention the word "polygraph" or "lie detector."

The Court: Tony, keep pushing on these things and we're asking for trouble, I'm telling you.

Mr. Brew: I think I have to correct that impression. He's brought it in. I think I'm entitled to finish it off.

The Court: He refused to take it?

Mr. Brew: He originally said he would take it and then he didn't go.

The Court: Okay. I think we can—

Mr. Behrens: If we do that, we'll get into details such as he was in the hospital under medication.

Mr. Brew: Let him.

Mr. Behrens: He was suckered into signing a paper saying he would take it and he never intended to take it.

The Court: Well, let it all come in.

Then, during cross-examination, the following exchange occurred:

Q [By Mr. Brew] And at that time Mr. Kellogg asked you about a lie detector test, a polygraph?

A [By Mr. Lennon] . Yes, sir.

Q And what did you tell him?

A He asked me to read this paper over carefully and his partner was filling out something on the typewriter and he asked me if I would take this test. He told me to read these papers over carefully.

I couldn't see the papers hardly at all. I had both my eyes almost closed shut. I told him I would and I signed the paper.

Q And you signed the paper.

A Yes, sir.

Q Okay. But you later changed your mind.

A Yes, sir. That was when his partner came to my home and told me: Are you ready to go? And I was babysitting that day and I told him, I said: No, I'm babysitting.

And he goes: I want to know yes or no are you going to go. That's all Mr. Kellogg wants to know.

And I told him: No. And he goes: Fine. That's all I need to know.

And he left.

Q So you didn't go.

A No.

Q You made arrangements to go and take the polygraph test on a particular date and you didn't go.

A No.

Q No, you hadn't made arrangements, or no, you didn't go?

A No, I did not go.

Defendant was convicted as charged and sentenced to presumptive sentences on all counts, to be served concurrently. On appeal, the Court of Appeals reversed and remanded for a new trial. *State v. Ikirt,* 2 CA–CR 4035 (Ariz.App.) (filed April 2, 1986). The court reversed because the trial judge improperly admitted evidence of Lennon's refusal to submit to a polygraph examination. The court stated that this was not a case of invited error by defense counsel eliciting the testimony from Lennon since counsel immediately interrupted the witness, and had previously instructed him not to mention the polygraph exam. The court stated that since reference to a polygraph test is inadmissible *for any reason,* it was error to allow the prosecutor to cross-examine Lennon in order to elaborate upon or explain Lennon's polygraph remark. The court concluded that there was obvious prejudice to the defendant, thereby mandating a new trial.

In Arizona, evidence of a polygraph test is generally inadmissible, and reference to such a test is improper. *E.g., State v. Bowen,* 104 Ariz. 138, 141, 449 P.2d 603, 606, *cert. denied,* 396 U.S. 912, 90 S.Ct. 229, 24 L.Ed.2d 188 (1969). Polygraph evidence is deemed inadmissible because it is unreliable and the trier of fact has a tendency to treat such evidence as conclusive on the issue of guilt. *See State v. Valdez,* 91 Ariz. 274, 278–79, 371 P.2d 894, 897–98 (1962). Generally, a defendant may not introduce evidence of his willingness to take a polygraph test; likewise, the state may not show defendant's refusal to submit to such a test. *State v. Madsen,* 125 Ariz. 346, 351, 609 P.2d 1046, 1051, *cert. denied,* 449 U.S. 873, 101 S.Ct. 213, 66 L.Ed.2d 93 (1980).

█ If the parties stipulate to its use, however, polygraph evidence may be admitted. *See State v. Marquez,* 113 Ariz. 540, 544, 558 P.2d 692, 696 (1976). In addition, reference to polygraph evidence has been allowed where defense counsel opens the door to otherwise irrelevant or prejudicial evidence. *See e.g., State v. Roberts,* 144 Ariz. 572, 698 P.2d 1291 (App.1985). In *Roberts,* defense counsel deliberately attempted to elicit a response from defendant about a lie detector test. In the instant case, the witness's statement that he had been offered the opportunity to take a lie detector test was not responsive to the question asked by defense counsel, and thus this is not a true case of invited error.

■ We note, however, that during the bench conference the defense counsel did not object to the prosecutor's proposed subject for cross-examination of the witness. Defense counsel did protest during the conference that allowing the prosecutor to cross-examine the witness about a polygraph test would raise the issue that the witness had been in the hospital under medication when he was asked to take the test and that he was "suckered into" signing a statement that he would take the test. Nevertheless, we find that this does not constitute an objection to the prosecutor's request to inquire about the conversation concerning the lie detector test. The failure to object to evidence, testimony or argument waives these matters on appeal. To preserve an issue for appeal a party must state distinctly the matter to which the party objects and the grounds for the objection. *State v. Thomas,* 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (1981). By failing to make a timely objection, the appellant has waived the issue on appeal unless the matter is one of fundamental error. *Id.*

■ While we will review fundamental error even though it was not raised at trial, *Miller v. Palmer,* 143 Ariz. 84, 87, 691 P.2d 1112, 1115 (App.1984), we do not find fundamental error here. The prosecutor was not attempting to make an improper use of the witness' failure to take the polygraph test. His purpose was to correct any false impression which may have been left in the minds of the jurors after the remarks by the witness about the offer to take a lie detector test.

That portion of the memorandum decision of the Court of Appeals dealing with the issue presented for review is vacated. The judgment and sentence of the superior court is affirmed.

### SUPPLEMENTAL OPINION

HOLOHAN, Justice (Retired).

After this court issued its opinion vacating the decision of the Court of Appeals and affirming the defendant's conviction, the defendant, Jeffrey Lynn Ikirt, filed a motion for reconsideration contending that a number of the issues that he had raised on his appeal to the Court of Appeals had not been considered on appeal. We grant the defendant's motion to reconsider so that we may reexamine the case in light of the defendant's contentions.

A brief review of the procedural history of the appeal is necessary to understand the present posture of the case. The defendant filed an appeal with the Court of Appeals after his conviction in the superior court. In that appeal he raised five issues. The Court of Appeals, in a memorandum decision, considered only two of the defendant's issues, reversed the conviction, and ordered a new trial. *State v. Ikirt,* 2 CA–CR 4035, filed April 2, 1986. The state filed, pursuant to Rule 31.19(a), Rules of Criminal Procedure, 17 A.R.S.[1] a petition for review raising a single issue: the admissibility of testimony concerning the failure of a witness to take a polygraph examination. The defendant, however, did not file a cross-petition for review to request this court's consideration of the issues left undecided by the Court of Appeals.[2] *See* Rule 31.19(a).

■ The primary issue presented in the defendant's motion for reconsideration is whether this court, in a criminal appeal accepted for review on the state's petition, must also consider and decide all the issues raised by a defendant in the Court of Appeals even if a cross-petition for review was not filed.

The Arizona Constitution, article 2 § 24 grants an accused the right to appeal in all cases. Except for cases in which the accused has been given a life sentence or the death penalty, an appeal from a criminal conviction in the superior court is to the Court of Appeals. A.R.S. §§ 12–120.-21(A)(1), 13–4031; *State v. Shattuck,* 140

---

1. The Arizona Rules of Criminal Procedure will be cited as Rule ___ throughout this opinion.

2. Wallace R. Hoggatt was not a member of the Cochise County Public Defender's Office at this time and no longer represented the defendant.

Ariz. 582, 684 P.2d 154 (1984). Review of the Court of Appeals' decisions by this court is a matter of discretion. Rule 31.-19(f). *Id.*, 140 Ariz. at 584, 684 P.2d at 156.

To invoke the discretionary appellate jurisdiction of this court, the rules of procedure require that a party file an appropriate petition for review or cross-petition for review setting out the issues for which review is sought. Rule 31.19(a) and (c). If this court exercises its discretion and grants review, it will specify the issue or issues which are to be reviewed. Rule 31.19(f). Although a defendant has the right to an appeal in a criminal case, the appeal must be properly initiated, *State v. Williams*, 144 Ariz. 487, 698 P.2d 732 (1985); the record on appeal must contain the material to which objection is made, *State v. Zuck*, 134 Ariz. 509, 658 P.2d 162 (1982); and the defendant must raise and argue the issue relied upon in the appeal. *State v. Smith*, 125 Ariz. 412, 610 P.2d 46 (1980); *State v. Gortarez*, 141 Ariz. 254, 686 P.2d 1224 (1984); *State v. McCall*, 139 Ariz. 147, 677 P.2d 920 (1983). We see no distinction between not raising an issue on appeal and not filing a petition or cross-petition for review—if an issue is not presented for review, it is waived. We acknowledge that we have never specifically held that the failure to file a cross-petition for review acts as a waiver, but we do so now.

We have taken a similar position on waiver in respect to Rule 32. In *State v. Carriger*, 143 Ariz. 142, 692 P.2d 991 (1984), we held that a petitioner had the burden to assert grounds that bring him within the provisions of Rule 32 in order to obtain relief, and a failure to comply with Rule 32 procedure will result in a finding that the petitioner waived his right to present a Rule 32 petition. *Id.*, 143 Ariz. at 146, 692 P.2d at 995.

The necessity for a defendant to file a cross petition for review to preserve the claim of error becomes clearer when the Arizona appeal system is understood. The process of review by this court is part of the appeal process. Unlike the certiorari review procedure followed by the United States Supreme Court and several of the state court systems,[3] a case accepted for review by this court is not returned to the Court of Appeals after our decision. This court makes the final determination and issues the mandate to the trial court. *See* Rule 31.19(g); Rule 24(a)(4), Rules of Civil Appellate Procedure, 17B A.R.S. If this court denies the petition and cross petition for review, the Court of Appeals issues the mandate to the trial court. Rule 31.19(h). This procedure comports with the notion that the court which makes the binding decision should issue the mandate.

The defendant argues that it would be unfair to deny him his right of appeal because the necessity of filing a cross-petition for review was never clearly announced by this court. We agree. The defendant also reminds us that he is entitled to have the case reviewed by an appellate court for fundamental error. Again we agree. Notwithstanding a defendant's failure properly to pursue an appeal, A.R.S. § 13–4035 has for many years been construed to require that the supreme court or appellate court must review the appeal for fundamental error. *See Smith v. State*, 23 Ariz. 469, 204 P. 1032 (1922) (construing Section 1171, Revised Statutes of 1913, Penal Code, an earlier version of part of A.R.S. § 13–4035); *State v. Allen*, 140 Ariz. 412, 415, 682 P.2d 417, 420 (1984); *State v. Cannon*, 148 Ariz. 72, 79, 713 P.2d 273, 280 (1985).

We have, therefore, considered the points raised by the defendant in his appeal to the Court of Appeals. We note, however, that

---

**3.** Although neither the Rules of Criminal Procedure nor the Rules of Civil Appeal Procedure provide for it, there is no impediment that would prevent this court from adopting a certiorari review practice on appeal. Under this court's constitutional power to make rules relative to all procedural matters in any court (Art. 6, § 5(5)), we could adopt such a procedure and leave to the Court of Appeals the responsibility for implementing our decisions. The Civil Practice and Procedure Committee and the Appellate Handbook Committee have submitted proposed changes to the rules governing petitions for review which address the situation presented in this case. The proposed rule changes will be circulated for public comment prior to consideration by this court.

in future cases, civil or criminal, a party must file a cross-petition for review to preserve an issue for consideration by this court. Failure to file a cross-petition will be deemed a waiver of the issue.

After reviewing the record and the issues raised in the defendant's appeal we find that we need address but one issue which is dispositive of the case. We have concluded that the case must be reversed because the prosecutor improperly commented on the defendant's failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

### DISCUSSION

The facts concerning the issue arose when the defense called the defendant's mother to the stand. Defense counsel began to ask her several questions about an alleged conversation she had had with the defendant the day before the fire. The prosecutor made several hearsay objections, stating in open court that the defendant's statements were not admissible hearsay. The defense counsel then asked whether the defendant had told her that he had visited the Logans' residence that day. The prosecutor again objected on hearsay grounds. The following then occurred, in the presence of the jury:

> MR. BEHRENS [defense counsel]: Well, your honor, I'm merely trying to lay foundation for the excited utterance exception to the hearsay rule.
>
> MR. BREW [prosecutor]: Your honor, I don't believe you can get the communication in in the guise of laying a foundation. *I think Mr. Ikirt is here.*

R.T. Vol. VI at 130 (emphasis added).

The trial court sustained the objection. Defense counsel asked for a bench conference and the following occurred:

> THE COURT: You're not going to get that in on excited utterance.
>
> MR. BREW: He had to have an unavailable declarant, Your Honor. *He's got an available declarant.*
>
> \*   \*   \*   \*   \*   \*
>
> MR. BEHRENS: I want to specifically object to Mr. Brew's indication that

was calculated to indicate to the jury that Mr. Ikirt is here and that that relates to a possible comment upon a failure to take the stand if he so chooses to. I therefore move for a mistrial on that basis.

> MR. BREW: Your Honor, it's relevant. He's claiming hearsay exception and we have an available declarant and that's one of the considerations.
>
> THE COURT: Yes. But he under 803— that is where the declarant is available.
>
> MR. BREW: *The only purpose I have making the statement is to indicate the declarant is available.*

*Id.* at 131 (emphasis added). The court denied defense counsel's motion for mistrial.

Relying on *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the defendant contends that the prosecutor's comment violates his fifth amendment right against self-incrimination. In *Griffin,* the United States Supreme Court held that any comments by a prosecutor about the failure of the defendant to testify violates a defendant's right against self-incrimination. *See also State v. Smith,* 101 Ariz. 407, 420 P.2d 278 (1966). Article 2, § 10 of the Arizona Constitution and A.R.S. § 13–117(B) also provide such protection to criminal defendants in Arizona. An accused is entitled to be free of any comment, direct or indirect, by design or accident, about a failure to take the stand. *State v. Cannon,* 118 Ariz. 273, 576 P.2d 132 (1978). Whether the prosecutor's comment is improper depends upon the context in which it was made, and whether the jury would naturally and necessarily perceive it to be a comment on the defendant's failure to testify. *State v. Schrock,* 149 Ariz. 433, 719 P.2d 1049 (1986). We will not reverse an improper comment unless it is prejudicial. *State v. Sullivan,* 130 Ariz. 213, 218, 635 P.2d 501, 506 (1981).

The prosecutor's statement in this case is very similar to that found to be improper in *Ex Parte Tucker,* 454 So.2d 552 (Ala.1984). There the defense counsel asked a defense witness what the defendant had told him in

a conversation. The prosecutor made a hearsay objection and stated in open court: "*She's here,* may it please the court. *She can tell what she told him.*" *Id.* at 553 (emphasis original). Despite the trial court's instruction telling the jury to disregard the statement, the Alabama Supreme Court reversed and remanded stating:

> Clearly, the prosecutor's comments in the case at bar raise the possibility that the jury could have understood them to be a reference to the defendant's failure to testify. In our view, these comments most probably made an indelible impression upon the jury, alerting the jury to the defendant's opportunity to refute the state's case. After such a comment, a defendant must either testify, or admit guilt by silence.

*Id.* at 553.

 *Tucker* is distinguishable from the present case only in the addition of the remark, "She can tell what she told him." We do not believe the difference is significant. In this case the prosecutor had already made several hearsay objections and stated that the defendant's statements to his mother were inadmissible hearsay. The jury would naturally and necessarily have understood the prosecutor's statement "Mr. Ikirt is here" to mean that the defendant could take the stand and tell them what he told his mother. *See State v. Christensen,* 129 Ariz. 32, 39, 628 P.2d 580, 587 (1981). Whether deliberately or inadvertently, the prosecutor's remark not only drew the jury's attention to the exercise of a legitimate constitutional right, but it also put pressure on the defendant to testify. We conclude that this constitutes an improper comment on the defendant's failure to testify. *Contra, Barnes v. State,* 97 Nev. 354, 630 P.2d 1221, 1223 (1981) (holding that prosecutor's statement after hearsay objection that if the defendant "wants to talk, he can get up on the stand and do it," would not "naturally and necessarily" be taken as a comment on the defendant's failure to testify).

The state advances several reasons why the defendant suffered no prejudice from the prosecutor's statements. We find them to be without merit. The state's case was entirely circumstantial. Although the defendant's defense was alibi, he did not testify. Under these circumstances we cannot say that the error was not prejudicial to the defendant.

Because of the error in the trial of this case, the previous decision of this court affirming the defendant's conviction is set aside, the judgment of conviction is reversed, and the case is remanded to the superior court for a new trial.

GORDON, C.J., and FELDMAN, V.C.J., and CAMERON, J., concur.

MOELLER, J., did not participate in the determination of this matter.