NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MARTINA VERDUGO PATRON, *Appellant.*

No. 1 CA-CR 13-0629
FILED 9-3-2015

Appeal from the Superior Court in Maricopa County
No. CR 2011-007612-001
The Honorable David B. Gass, Judge

**AFFIRMED IN PART; VACATED IN PART**

COUNSEL

Office of the Attorney General, Phoenix
By Terry M. Crist III
*Counsel for Appellee*

The Nolan Law Firm, PLLC, Mesa
By Cari McConeghy Nolan
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Andrew W. Gould and Judge Peter B. Swann joined.

---

**H O W E**, Judge:

¶1        Martina Patron appeals her convictions and sentences for aggravated assault, aggravated robbery, and two counts of kidnapping. For the following reasons, we vacate Patron's conviction and sentence for one count of kidnapping and affirm her other convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

### 1. The Incident at the Bar

¶2        Late one evening, Bernardo[1] was assaulted at the "El 60" bar after having a few beers with friends. In the parking lot, Carlos A. Balli approached Bernardo and offered to sell him drugs. Bernardo declined, but then said, "Let me have a beer, and we'll see." Bernardo went inside the bar, had one beer, and then returned to his car.

¶3        Balli and another man approached Bernardo again and asked if he was going to buy drugs. Bernardo declined, but then asked Balli what drugs the seller had. Balli said he had cocaine and methamphetamine and gave Bernardo a "crystal" to look at. The men argued over the price. During the argument, Balli pulled Bernardo out of the car and dragged the man into the bar with the help of another man. Patron watched from nearby.

¶4        Once inside the bar, the men beat Bernardo at Patron's order. Patron told the men to handcuff Bernardo in the men's restroom, beat him, and take his money. The men did so as Patron looked on; they demanded that Bernardo tell them where his money was. Patron said she would get Bernardo's car stereo, and one of the men asked her, "What should we do with him, Cynthia?" She told them to kill him.

¶5        After Patron left, Bernardo begged the men not to kill him and gave them his money, including three $100 bills. When Patron returned, the

---

[1]        We use the victim's first name to protect his privacy. *State v. Maldonado*, 206 Ariz. 339, 341 n.1 ¶ 2, 78 P.3d 1060, 1062 n.1 (App. 2003).

men asked her how much they should take; she responded to take it all and let him go. The men removed the handcuffs, gave Bernardo his keys, and then pushed him out the bar. Patron warned Bernardo to leave, but not to take his car, and if he called the police, they would kill him.

¶6　　　Bernardo contacted the police anyway. He walked to a nearby convenience store and had the clerk call the police. When the police arrived, they noted that Bernardo had a swollen eye, fresh bruises, and marks on his wrists consistent with handcuff restraint. He told the officers about the assault and described Patron as a Hispanic female named "Cynthia," wearing a white shirt.

¶7　　　When the officers arrived at the bar to investigate, they could not enter. The doors were locked, even though the parking lot had cars, music blasted from the bar, and voices could be heard inside. One officer knocked for five minutes before Patron answered, identifying herself as "Cynthia," one of El 60's bartenders. When the officers asked if an assault had occurred earlier, she denied it, but volunteered that a drunken man had caused trouble earlier and was asked to leave. The officers told Patron that Bernardo had accused her of handcuffing him, and she responded that he could have done that to himself.

¶8　　　Balli then attempted to prevent the officers from entering. He came to the door and identified himself as the bar's manager. After some back and forth, Balli let the officers into the bar. The officers proceeded to the men's restroom and found fresh blood on the wall and urinal. An officer took samples of the blood. A toilet seat lay beside the toilet's basin. The officers seized three $100 bills from Balli and a pair of handcuffs from his office.

¶9　　　Meanwhile, another officer explained the identification procedure to Bernardo. The officer told Bernardo that he had no obligation to identify anyone, that whether or not he identified anyone would not matter, and that the officer would not tell any suspect if he had identified him or her. Bernardo indicated that he understood. The officer took Bernardo back to the bar; less than an hour had elapsed since the police had responded to the incident. The officer turned on the patrol car's lights and aimed them at the bar's entrance. The police showed a woman and a man separately to Bernardo. Bernardo identified the man as Balli and after looking at the woman for "three to five minutes" identified her as "Cynthia."

**2. Patron's Trial**

¶10        At trial, officers testified about the police taking a buccal swab of Bernardo at the scene and collecting the handcuffs and a swab used to get blood from the men's restroom wall. The State moved to admit the handcuffs and blood swab, but Patron objected to their admission, claiming that the State had not provided an adequate chain of custody. The trial court conditionally admitted the evidence with the understanding that the State would complete the chain of custody with further testimony.

¶11        A police criminalist then testified, first stating that she saw the typical "markers" indicating that she handled the evidence—the buccal and blood swabs—properly, specifically answering questions about its chain of custody. The State then moved to admit both, and Patron had no objection. The trial court admitted the buccal and blood swabs.

¶12        The criminalist testified that the crime lab followed the standard procedure in analyzing the DNAs of the buccal and blood swabs. She testified that she performed all of the testing and analysis of the blood swab, including creating a DNA profile for it. While she tested the blood sample, another criminalist created the buccal swab's DNA profile, and two other criminalists reviewed that profile. Afterwards, the testifying criminalist received the buccal swab's DNA profile. She then conducted her own analysis of the buccal swab's DNA profile and compared it to the blood swab's DNA profile that she had created.

¶13        The criminalist then wrote a report from the analysis and comparisons she had made. Based on her work, the criminalist concluded that the blood swab's DNA profile, collected from the men's restroom, matched the buccal swab's DNA profile, collected from Bernardo. The criminalist that created the buccal swab's DNA profile did not testify. The State did not move to admit into evidence the testifying criminalist's report or any work of the non-testifying criminalist.

¶14        Before closing arguments, Patron moved to strike the criminalist's testimony based on hearsay, arguing that "she was just testifying off the report of another" criminalist. Patron argued that her earlier objection to chain of custody for the blood swab preserved this objection to all the DNA testimony, but she conceded that the State established chain of custody. After the State clarified the criminalist's testimony, the court explained that Patron's earlier objections were only to chain of custody for the exhibits themselves and denied her motion. Patron did not argue that the testimony violated her Confrontation Clause right.

¶15        The State moved to conform the indictment to the evidence, requesting the court to change "handcuffing Bernardo . . . in the bathroom" to "handcuffing Bernardo . . . in the bar" in count 2, kidnapping. Patron objected, but the court granted the motion. The State also informed the court that it would limit its aggravating factors to presence of accomplices and pecuniary gain. The final jury instructions included directions for attempt to conceal evidence and threats against Bernardo. The jurors convicted Patron of aggravated assault, aggravated robbery, and two counts of kidnapping.

¶16        The State informed the court that an aggravation hearing was unnecessary because the two aggravating factors it was relying on were inherent in the verdicts. At sentencing, the court found that Patron had one historical prior felony conviction and found several mitigating factors. The court sentenced Patron to mitigated terms of 4.5 years' imprisonment for both kidnapping convictions, an aggravated term of 2.75 years' imprisonment for aggravated assault, and a presumptive term of 4.5 years' imprisonment for aggravated robbery, all concurrent. When the court imposed the aggravated term for aggravated assault, it noted, "[T]he victim did receive some significant injuries." Patron did not object. She timely appealed.

## DISCUSSION

¶17        Patron argues that insufficient evidence supports her convictions and that the trial court erred in admitting the criminalist's testimony, in admitting evidence of Bernardo's pretrial identification of her, in giving the jurors improper instructions, in sentencing her to an aggravated term for aggravated assault, and in amending the indictment to conform to the evidence.

### 1. Sufficiency of the Evidence

¶18        Patron argues that insufficient evidence supports her convictions. We review de novo the sufficiency of evidence to support a conviction. *State v. Pena*, 235 Ariz. 277, 279 ¶ 5, 331 P.3d 412, 414 (2014). In doing so, we view the evidence in the light most favorable to sustaining the verdict, resolving all reasonable inferences against the defendant. *State v. Greene*, 192 Ariz. 431, 436 ¶ 12, 967 P.2d 106, 111 (1998). Reversible error based on insufficiency of the evidence occurs only when no probative facts support the conviction. *State v. Felix*, 237 Ariz. 280, 289 ¶ 30, 349 P.3d 1117, 1126 (App. 2015). The evidence, however, must be substantial enough for a reasonable person to determine that it supports a verdict of guilty beyond

a reasonable doubt. *State v. Stroud*, 209 Ariz. 410, 411–12 ¶ 6, 103 P.3d 912, 913–14 (2005).

¶19      The jurors convicted Patron as an accomplice to kidnapping, aggravated assault, and aggravated robbery. *See* A.R.S. § 13–303(A)(3) ("A person is criminally accountable for the conduct of another if . . . . [t]he person is an accomplice of such other person in the commission of an offense. . . ."). Here, substantial evidence supports Patron's convictions for kidnapping, aggravated assault, and aggravated robbery. As an initial matter, the record shows that Patron was in charge during the incident: she ordered the men to beat Bernardo and take his money. She also ordered them to kill Bernardo and she made the ultimate call to spare his life. Her final statement to Bernardo about not calling the police or they would kill him demonstrates her vital role in the incident. Further, Patron prevented officers from entering the bar later that evening and denied that Bernardo was ever at the bar—indicating her consciousness of guilt for the entire incident.

¶20      Accordingly, the record supports one of Patron's kidnapping convictions.[2] *See* A.R.S. § 13–1304(A)(4) (providing that a person commits kidnapping if the person knowingly restrains another person with the intent to place the other person in reasonable apprehension of imminent physical injury). The record shows that Patron stood nearby as two men—upon her orders—dragged Bernardo out of his car, forcibly took him into the bar and the restroom and handcuffed him.

¶21      The record also supports Patron's aggravated robbery conviction. *See* A.R.S. §§ 13–1902(A), –1903(A) (providing that a person commits aggravated robbery if, with the aid of one or more accomplices,

---

[2]      Patron also argues that the trial court erred in amending the charge of kidnapping as alleged in count 2. We need not address this issue, however, because the State concedes—and Patron agrees—that we should dismiss one kidnapping count as multiplicitous. *See State v. Bruni*, 129 Ariz. 312, 318, 630 P.2d 1044, 1050 (App. 1981) ("Multiplicity is defined as charging a single offense in multiple counts."). Because kidnapping is a continuing crime, *State v. Braidick*, 231 Ariz. 357, 359 ¶ 7, 295 P.3d 455, 457 (App. 2013), and because the State charged and the jurors convicted Patron of a single offense of kidnapping in two counts, we vacate Patron's conviction and sentence for kidnapping as charged in count 2. *See id.* at ¶ 6 ("The State and federal double jeopardy clauses provide that a person may not be twice put in jeopardy for the same offense.") (internal quotation marks and citation omitted).

the person takes the property of another from the other's person and against the person's will, and in the course of doing so threatens or uses force against any person with intent to coerce the surrender of the property). The record shows that on Patron's order, the men beat Bernardo and demanded his money, and Bernardo gave it to them. When the police arrived at the bar, they collected three $100 bills from Balli that belonged to Bernardo.

¶22 The record further supports Patron's aggravated assault conviction. *See* A.R.S. §§ 13–1203(A)(1), –1204(A)(4) (providing that a person commits aggravated assault if the person intentionally, knowingly or recklessly causes physical injury to another person and does so while the other person is bound or otherwise physically restrained). Bernardo was handcuffed in the restroom and beaten, resulting in a swollen eye, fresh bruises, and marks on his wrists consistent with handcuff restraint. When the police arrived, they collected handcuffs in Balli's office. Accordingly, the evidence supports Patron's convictions as an accomplice to kidnapping, aggravated assault, and aggravated robbery.

¶23 Patron contends nonetheless that the discrepancies in Bernardo's statements to the police versus during trial undermined the evidence against her. The jurors, not the appellate court, however, weigh the evidence and determine a witnesses' credibility. *State v. Cid*, 181 Ariz. 496, 500, 892 P.2d 216, 220 (App. 1995). Jurors are free to credit or discredit testimony, and we cannot guess what they believed, nor can we determine what reasonable jurors should have believed. *State v. Bronson*, 204 Ariz. 321, 328 ¶ 34, 63 P.3d 1058, 1065 (App. 2003). Thus, because substantial evidence supports the jurors' verdicts, we will not disturb their decision. *Cid*, 181 Ariz. at 500, 892 P.2d at 220.

## 2. The Criminalist's Testimony

¶24 Patron next argues that the trial court erred in admitting the criminalist's testimony because the testimony included hearsay and it violated her right to confront the non-testifying criminalist. But Patron's objection to the chain of custody of the exhibits in general did not preserve her hearsay argument about the criminalist's testimony for appellate review. *See State v. Hamilton*, 177 Ariz. 403, 408, 868 P.2d 986, 991 (App. 1993) ("[A]n objection to the admission of evidence on one ground will not preserve issues relating to the admission of that evidence on other

7

grounds."). Patron has therefore waived her hearsay argument.[3] *See Continental Lighting*, 227 Ariz. at 386 ¶ 12, 258 P.3d at 204.

**¶25** We review constitutional claims de novo, *State v. Nordstrom*, 230 Ariz. 110, 117 ¶ 27, 280 P.3d 1244, 1251 (2012), but because Patron raises this claim for the first time on appeal, we review for fundamental error only, *see State v. Henderson*, 210 Ariz. 561, 567 ¶ 19, 115 P.3d 601, 607 (2005). Patron therefore bears the burden of establishing that error occurred, the error was fundamental, and the error caused her prejudice. *Id.* at 568 ¶¶ 23–26, 115 P.3d at 608. The trial court committed no error.

**¶26** An expert "may testify to otherwise inadmissible evidence, including the substance of a non-testifying expert's analysis, if such evidence forms the basis of the expert's opinion and is reasonably relied upon by experts in the field" without violating the Confrontation Clause. *State ex rel. Montgomery v. Karp*, 236 Ariz. 120, 124 ¶ 13, 336 P.3d 753, 757 (App. 2014). When the expert gives her independent opinion, she is the witness whom the defendant has the right to confront. *Id.* at ¶ 14. In such cases, the Confrontation Clause is satisfied if the defendant has the opportunity to fully cross-examine the expert who testifies against her, allowing the factfinder to understand the basis for the expert's opinion and determine whether that opinion should be found credible. *Id.*

**¶27** Here, the record shows that the criminalist gave her independent opinion and was available for cross-examination. The criminalist testified that she performed all the testing and analysis of the blood swab. While another criminalist created the buccal swab's DNA profile, and two others checked its accuracy, when the testifying criminalist received the buccal swab's DNA profile, she performed her own review of it. Moreover, she testified that she compared the two DNA profiles and wrote the report with her conclusions. She stated that based on her work, the blood swab's DNA profile matched the buccal swab's DNA profile. At trial, the State did not offer any documents created by the non-testifying criminalist into evidence; it offered the testifying criminalist's independent,

---

[3] Patron has also waived her claim of prosecutorial misconduct regarding the chain of custody because she raises the issue for the first time in her reply brief. *See Continental Lighting & Contracting, Inc. v. Premier Grading & Utilities, LLC*, 227 Ariz. 382, 386 ¶ 12, 258 P.3d 200, 204 (App. 2011) (providing that "legal theories must be presented timely to the trial court," and if not, then they are waived on appeal); *State v. Watson*, 198 Ariz. 48, 51 ¶ 4, 6 P.3d 752, 755 (App. 2000) (providing that appellate courts will not review issues not raised in the opening brief).

expert opinion. Consequently, Patron had the opportunity to fully cross-examine her, thereby satisfying the Confrontation Clause.

### 3. The Pretrial Identification

**¶28** Patron argues that the trial court erred in admitting Bernardo's pretrial identification of her. Because Patron did not object to the trial court, we review the issue for fundamental error. *State v. Schrock*, 149 Ariz. 433, 440, 719 P.2d 1049, 1056 (1986). The defendant bears the burden of proof in fundamental error review, however, *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607, and Patron waived this issue for review because she did not argue on appeal that the alleged error was fundamental, *see* Ariz. R. Crim. P. 31.13(c)(1)(vi) ("The appellant's brief shall include . . . the proper standard of review . . . with citations to relevant authority, at the outset of the discussion of that contention."); *State v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989) (citing Rule 31.13 and providing that failure to argue a claim constitutes abandonment and waiver of the claim); *State v. Moreno-Medrano*, 218 Ariz. 349, 354 ¶ 17, 185 P.3d 135, 140 (App. 2008) (concluding that because the defendant did not argue that the alleged error was fundamental, the argument was waived).

**¶29** Regardless of the waiver, however, although a one-person show-up is inherently suggestive, *State v. Williams*, 144 Ariz. 433, 439, 698 P.2d 678, 684 (1985), the show-up identification procedures "are not improper if conducted near the time of the crime or at the scene of the crime and the evidence shows that the identification was reliable," *State v. Nelson*, 129 Ariz. 582, 587, 633 P.2d 391, 396 (1981). Here, the record shows that Bernardo identified Patron at the scene within an hour of the police's arrival and that the identification was reliable. After observing Patron for several minutes, Bernardo identified her as "Cynthia"—Patron's nickname. Bernardo did not merely point out Patron as the woman he believed was involved in the incident. He said that the woman's name was "Cynthia"; correctly identified Patron as "Cynthia," even though he had never met her before; and did so without knowing "Cynthia" was only Patron's nickname. Thus, nothing in the record suggest that Bernardo's identification of Patron "was not reliable enough to avoid a substantial likelihood of misidentification." *State v. Lehr*, 201 Ariz. 509, 520 ¶ 46, 38 P.3d 1172, 1182 (2002). Consequently, the trial court did not err in admitting evidence of Bernardo's pretrial identification of Patron.

### 4. The Jury Instructions

**¶30**    Patron next argues that no evidence supports the instructions for attempt to hide or conceal evidence or threaten a witness. Because Patron did not object to the trial court, we review the issue for fundamental error. *Schrock*, 149 Ariz. at 440, 719 P.2d at 1056. To prevail under fundamental error review, a party must prove error, that the error was fundamental, and that it caused her prejudice. *Henderson*, 210 Ariz. at 567 ¶ 20, 115 P.3d at 607; *State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342 (1992). We find no error.

**¶31**    A party is entitled to a jury instruction on any theory reasonably supported by the evidence. *State v. Vandever*, 211 Ariz. 206, 208 ¶ 7, 119 P.3d 473, 475 (App. 2005). Evidence that a defendant threatened or otherwise attempted to influence a witness is admissible. *State v. Robles*, 135 Ariz. 92, 94, 659 P.2d 645, 647 (1983) (threats); *State v. Allen*, 140 Ariz. 412, 414, 682 P.2d 417, 419 (1984) (attempts to influence). Likewise, evidence that a defendant attempted to conceal or hide evidence is also admissible. *State v. Van Alcorn*, 136 Ariz. 215, 218, 665 P.2d 97, 100 (App. 1983). Attempts to conceal evidence and threats against a witness are both evidence of "consciousness of guilt." *Id.* (concealing evidence); *State v. Settle*, 111 Ariz. 394, 396, 531 P.2d 151, 153 (1975) (threats). Thus, when a trial court admits consciousness of guilt evidence, it may give the appropriate instructions. *See Van Alcorn*, 136 Ariz. at 218, 665 P.2d at 100.

**¶32**    Here, the evidence supported the instructions. Regarding hiding or concealing evidence, the record shows that when the police arrived at the bar, the doors were locked despite the fact that the bar was still open; regulations required that doors remain unlocked during business hours; and police could hear music playing and people speaking inside. Further, the police knocked on the door for five minutes before Patron finally opened it. She then stood in the doorway for several minutes, preventing their entrance. When police tried to enter past Patron, Balli attempted to prohibit their entrance. This evidence supported the concealment instruction.

**¶33**    For threats against a witness, the record reveals that Patron threatened to kill Bernardo if he called the police. While the instruction referred to attempts to *influence testimony* by threats rather than *prevent contact with the police* by threats, to threaten to kill a witness if the witness calls police is an attempt to influence testimonial statements. The instruction's wording may have been imperfect, but the instruction adequately informed the jurors of the legal concept at issue. *See State v.*

*Noriega*, 187 Ariz. 282, 284, 928 P.2d 706, 708 (App. 1996) (providing that instructions need not be faultless, but it must give jurors an understanding of the issues and must not mislead them). Consequently, the trial court did not err in instructing the jurors on attempt to hide or conceal evidence and threats against a witness.

## 5. The Sentence for Aggravated Assault

¶34        Patron next contends that the trial court erred in imposing the aggravated 2.75 years' imprisonment for aggravated assault because the jurors did not find any aggravating factors for sentencing purposes. Patron did not object to the trial court, but we may reverse an illegal sentence on appeal even in the absence of an objection. *State v. Canion*, 199 Ariz. 227, 230 ¶ 10, 16 P.3d 788, 791 (App. 2000). Imposition of an illegal sentence constitutes fundamental error. *State v. Martinez,* 226 Ariz. 221, 224 ¶ 17, 245 P.3d 906, 909 (App. 2011). Under fundamental error review, we must first find that the court committed some error. *Lavers*, 168 Ariz. at 385, 814 P.2d at 342. The trial court committed no error.

¶35        "Courts have power to impose sentences only as authorized by statutes and within the limits set down by the legislature." *State v. Rosario,* 195 Ariz. 264, 268 ¶ 27, 987 P.2d 226, 230 (App. 1999). As relevant, a trial court may impose the aggravated term for aggravated assault if at least two aggravating factors in A.R.S. § 13–701 apply, A.R.S. § 13–703(F), or if the aggravating factors are reflected in the verdict, *see State v. Martinez*, 210 Ariz. 578, 583 ¶ 16, 115 P.3d 618, 623 (2005).

¶36        Along with aggravated assault, the jurors convicted Patron of aggravated robbery. A person commits robbery if, in the course of taking property of another from his person or immediate presence and against his will, she uses force with the intent to coerce the surrender of property or to prevent resistance. A.R.S. § 13–1902(A). The robbery becomes aggravated if the person is "aided by one or more accomplices actually present." A.R.S. § 13–1903(A). The record shows that Patron instructed two men to beat Bernardo, take all his money, kill him, and leave him. As the men were following her directions, she stood nearby and observed, continuing to give directions and answering their questions. The record also shows that Patron and the men assaulted Bernardo solely to take his money, and the only property Patron and the men ultimately took from Bernardo's person was his money. "[P]ecuniary means money[.]" *Shepherd v. Platt*, 177 Ariz. 63, 65, 865 P.2d 107, 109 (App. 1993). Consequently, the jury's verdict for aggravated robbery reflects that Patron committed the offenses with the presence of accomplices and for pecuniary gain. Accordingly, because the

jurys' verdict reflected the two aggravating factors, the trial court did not err in imposing an aggravated term for the aggravated assault.

## CONCLUSION

¶37      For the foregoing reasons, we vacate Patron's conviction and sentence for kidnapping as charged in count 2 and affirm her other convictions and sentences.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama