NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

RODNEY JOURNEY, II, *Petitioner/Appellant*,

*v.*

JENNY BOURGEOIS, *Respondent/Appellee*.

No. 1 CA-CV 24-0556 FC

FILED 02-25-2025

Appeal from the Superior Court in Maricopa County
No. FC2021-090918
The Honorable Quintin H. Cushner, Judge

**AFFIRMED**

COUNSEL

Alongi Law Firm PLLC, Phoenix
By Thomas P. Alongi, Sarah Hansen, Elizabeth Alongi
*Counsel for Petitioner/Appellant*

Cantor Law Group, PLLC, Phoenix
By Caleb McKay, Travis Owen
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**P A T O N**, Judge:

¶1 Rodney Journey ("Father") appeals the superior court's order granting Jenny Bourgeois's ("Mother") post-judgment petition to modify parenting plan, requiring that Father's parenting time be supervised and granting Mother sole legal decision-making authority. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Father and Mother have a child in common ("Child"), who was born April 2019. The two never married, but Father is listed as Child's father on her birth certificate. In March 2021, Father filed a petition to establish paternity, legal decision-making, parenting time, and child support, asking the court to order joint legal decision-making with equal authority for both parents. In April 2022, the parties stipulated to an entry of judgment that, as relevant here, provided for joint legal decision-making authority over Child and an alternating parenting time schedule, which the court entered.

¶3 A little more than a year after the entry of judgment, Mother moved for a Post-Decree Temporary Order Without Notice for Modification, alleging that Child made allegations about Father. Mother stated she filed a case with the Department of Child Safety ("DCS") and made a police report. She requested sole legal decision-making authority and physical custody of Child.

¶4 Mother subsequently filed a second motion for a temporary order without notice for legal decision-making and parenting time, in which she mentioned an April 21, 2023, interview with "a DCS Child therapist"—later identified as Jennifer Ingalls. Mother then filed a petition to modify legal decision-making, parenting time, and child support, detailing what Child allegedly told her. The court granted Mother's second motion for temporary order without notice and temporarily suspended Father's parenting time. In May 2023, Father filed a response to Mother's

petition to modify legal decision-making, arguing that Mother coached Child to make false allegations against him. After an evidentiary hearing, on May 9, 2023, the court entered temporary orders directing that Father's parenting time of at least five hours a week be supervised.

¶5            In August 2023, Father filed a motion for reconsideration of the May 9, 2023, order, asserting that the DCS and police matters had been closed and he passed a polygraph test. In support of his motion for reconsideration, he attached a copy of the June 1, 2023, polygraph test report, which concluded that he voluntarily took the test, and his denials about Child's allegations were truthful. Mother responded that the court could not consider the new polygraph evidence since it did not exist at the time of the May 2023 temporary orders hearing.

¶6            The court held a bench trial on Mother's petition in May 2024. Mother testified and called two witnesses: Brian Fuller, a polygraph examiner different from the one who conducted Father's test, and Jennifer Ingalls, a forensic interviewer who interviewed Child about the allegations. Father objected to admission of the polygraph report, arguing Fuller did not conduct the polygraph test and polygraph tests are generally inadmissible in court. The court overruled his objection and admitted the polygraph test report. The court stated it would "give it the weight that it's due" and would allow Fuller's testimony. Fuller testified that he disagreed with the polygraph test report, and said that in his opinion, Father did not pass it.

¶7            Before Ingalls testified, Father moved to strike Child's statements "since we do not know that this child was credible," noting Child "was not quite four" at the time of her statements to Ingalls. The court overruled his objection and allowed Ingalls to testify that, during the forensic interview, Child described her concerns about Father's behavior. Ingalls also mentioned that when she asked Child if someone told her what to say, Child gave a "non-sequitur response," but did not say that either parent coached her answers.

¶8            The superior court issued an order for legal decision-making, parenting time, and child support ("Order") in June 2024, in which it awarded Mother sole legal decision-making authority and Father supervised parenting time. The court stated that it did not consider the testimony and evidence regarding Father's polygraph test in its decision.

**¶9**        Father timely appealed the Order.  We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1) and 12-2101(A)(2).

## DISCUSSION

**¶10**        Father argues that the court erred by admitting polygraph evidence and by admitting Child's hearsay statements through the forensic interviewer's testimony.

**I.        The court did not err because it expressly stated it did not consider the polygraph in rendering its decision.**

**¶11**        Father argues the superior court erred by admitting polygraph evidence, stating that Arizona courts forbid debating, introducing, or admitting the results of a polygraph test.  He also argues that the court should not have permitted Fuller's testimony about the polygraph test, because Fuller was not the author of the polygraph test report and should not have been qualified as an expert.

**¶12**        We review the superior court's legal decision-making and parenting time orders for an abuse of discretion.  *See Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7 (App. 2003).  "We view the evidence in the light most favorable to sustaining the family court's findings, and we also determine whether evidence in the record reasonably supports the family court's findings."  *Vincent v. Nelson*, 238 Ariz. 150, 155, ¶ 17 (App. 2015); *see Hurd v. Hurd*, 223 Ariz. 48, 52, ¶¶ 16, 19 (App. 2009).

**¶13**        References to polygraph tests are generally inadmissible for any purpose in Arizona.  *State v. Hoskins*, 199 Ariz. 127, 144, ¶ 69 (2000).  But "reference to polygraph evidence has been allowed where defense counsel opens the door to otherwise irrelevant or prejudicial evidence."  *State v. Ikirt*, 160 Ariz. 113, 115 (1987).  Although Father objected to its admission at the hearing, noting "polygraphs are generally inadmissible at court," Father had previously attached the polygraph test report as part of his argument for why the court should grant his motion for reconsideration.

**¶14**        Even assuming the polygraph evidence was inadmissible, the superior court stated in its order that it "[gave] the testimony and evidence regarding Father's polygraph no weight in its determinations in this matter."  Absent evidence to the contrary, we accept the court's assertion that it gave no weight to the polygraph results and defer to the court's weighing of the remaining evidence.  *In re Gen. Adjudication of All Rts. to Use Water in Gila River Sys. & Source*, 198 Ariz. 330, 340, ¶ 25 (2000); *see also State*

*v. Warren*, 124 Ariz. 396, 402 (App. 1979) (even where inadmissible evidence is admitted, we will "assume, unless it affirmatively appears to the contrary, that the [superior court] judge only considered the competent evidence in arriving at the final judgment."). Accordingly, Father has not established error.

## II.   The court did not err by admitting Ingalls's testimony.

**¶15**       Father next argues the superior court erred by admitting Child's hearsay statements through forensic interviewer Jennifer Ingalls's testimony. Father contends that Ingalls failed to explain the forensic interview process and argues that Mother failed to lay the proper foundation for Ingalls as an expert witness under Arizona Rule of Evidence 702. Father further contends that Ingalls's testimony lacks foundation, because neither Ingalls's interview with Child nor her report was admitted into evidence.

**¶16**       At the evidentiary hearing, Father objected to Ingalls's testimony, arguing that Arizona Rule of Evidence 601 required Child to be deemed credible before any of Child's statements could be considered by the court through Ingalls's testimony. But Rule 601 addresses witness competency, not credibility. Ariz. R. Evid. 601. And Father did not object to Ingalls's testimony on hearsay grounds, only on the grounds that Child was not deemed credible. The court overruled Father's objection and allowed Ingalls to testify.

**¶17**       We review the superior court's rulings on admissibility of evidence for an abuse of discretion. *S Dev. Co. v. Pima Cap. Mgmt. Co.*, 201 Ariz. 10, 21, ¶ 32 (App. 2001). Father argues for the first time on appeal that Ingalls's testimony did not satisfy the requirements for expert testimony under Arizona Rule of Evidence 702. Father did not object on Rule 702 grounds—despite Ingalls answering several of Mother's questions regarding her background and experience at the outset of her testimony— nor did he submit any objections to exhibits or witnesses in his pretrial statement. Father's only objection to Ingalls's testimony was a relevance objection to whether Ingalls had interviewed children who told her a parent had coached them to say they were abused. Father has thus waived his Rule 702 argument on appeal and we will not consider it. *Harris v. Cochise Health Sys.*, 215 Ariz. 344, 349, ¶ 17 (App. 2007); *Payne v. Payne*, 12 Ariz. App. 434, 435 (App. 1970) (explaining that a party must timely present his legal theories before the superior court to give the superior court an opportunity to rule properly).

**¶18**        Mother claims that because neither party filed a Rule 2(a) notice under the Arizona Rules of Family Law Procedure, the rule against hearsay did not apply during the evidentiary hearing, so the court properly admitted Child's hearsay statements through Ingalls's testimony. Father responds that, although family court proceedings do not strictly require compliance with the rules of evidence, Arizona Rule of Evidence 403 still applies. But he raised his Rule 403 argument for the first time in his reply brief on appeal. As a result, this argument is waived. *Harris*, 215 Ariz. at 349, ¶ 17.

**¶19**        Waiver aside, hearsay is admissible in family court proceedings unless a party requests strict compliance with the Arizona Rules of Evidence. *Woyton v. Ward*, 247 Ariz. 529, 533, ¶ 16 (App. 2019); Ariz. R. Fam. Law P. 2(b)(1). Father did not do so here, and so Ingalls's hearsay testimony was admissible. *See Woyton*, 247 Ariz. at 533, ¶ 16; Ariz. R. Fam. Law P. 2(b). The superior court therefore did not err by admitting Ingalls's testimony.

**¶20**        Mother and Father have each requested awards of attorneys' fees and costs pursuant to Section 25-324. Father additionally requested an award of fees and costs pursuant to Section 25-403.08. In the exercise of our discretion, we decline to grant either party attorneys' fees. But as the prevailing party, Mother is entitled to recover her reasonable costs on appeal upon compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure. *See* A.R.S. § 12-341.

## CONCLUSION

**¶21**        We affirm.



MATTHEW J. MARTIN • **Clerk of the Court**
**FILED**:        JR